M. G. STOVALL *et al. v.* NEW YORK INDEMNITY COMPANY.*

(*Jackson.* April Term, 1928.)

Opinion filed July 16, 1928.

1. AUTOMOBILE. POSSESSION. CONSTRUCTIVE POSSESSION. UNLAWFUL TAKING OF AN AUTOMOBILE OF ANOTHER.

Where it appears that a salesman for a wholesale firm has obtained a claim check for an automobile belonging to said firm and stored in a public garage, for the purpose of taking a customer of the firm to the railroad station, had returned the automobile to the garage, but retained the claim check, again presented the claim check, procured the automobile and went on a personal pleasure trip, the salesman was not guilty of violating a statute which forbids any one not clothed with color of authority from taking and using automobiles for their own purposes. (Post, p. 309.)

Citing: Acts 1919, ch. 28; Acts 1921, ch. 17; Bailey v. State, 150 Tenn., 598-601.

2. AUTOMOBILES. AUTOMOBILE INSURANCE. ADDITIONAL ASSURED. DEFINED. PERMISSION OF ASSURED.

Where it appears that a salesman for a wholesale firm has obtained a claim check for an automobile belonging to said firm and stored in a public garage, for the purpose of taking a customer of the firm to the railroad station, had returned the automobile to the garage, but retained the claim check, again presented the claim check, procured the automobile and went on a personal pleasure trip, the salesman was using said automobile with the permission of his employer as applied under the Additional Assured Clause of an insurance policy which contains the following clause: "B. The words **Additional Assured** (s) used in the Insurance

Agreements shall mean (a) any person (s) while riding in or legally operating an automobile insured hereunder, or (b) any person, firm, or corporation legally responsible for the operation thereof, providing such use or operation is with the permission of the named Assured, or, if the named Assured is an individual, with the permission of an adult member of his family other than a chauffeur or domestic servant," said clause being so construed so as to place emphasis upon the purpose of the named insured to protect any person injured by the operation of the car by giving him a cause of action against the insurer, in the event of the insolvency or bankruptcy of the person responsible in law for injuries inflicted in the operation of the car. (Post, p. 310.)

3. **INSURANCE. AMBIGUOUS PROVISIONS. CONSTRUCTION.**

"Where words are so used in the contract of insurance that their meaning is ambiguous or susceptible of two interpretations differing in import, that interpretation which will sustain the claim of the policyholder and cover the loss should be adopted." (Post, p. 314.)

Citing: Laue v. Grand Fraternity, 132 Tenn., 235, 247; Life Ins. Co. v. Galbraith, 115 Tenn., 471, 483.

4. **AUTOMOBILE INSURANCE. PERMISSIVE USE OF AUTOMOBILE.**

The words "providing such use or operation is with the permission of the named assured," were intended to exclude from the protection of the policy a person who should take the automobile and use it without permission or authority in the first instance. If, however, the automobile covered by the policy is delivered to another for use with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession. (Post, p. 314.)

## FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
HON. D. W. DEHAVEN, Chancellor.

WINCHESTER & KNAPP, for defendants, appellants.

CRABTREE & CRABTREE, for complainants, appellee.

MR. JUSTICE SWIGGART delivered the opinion of the
Court.

A decree was rendered by the Chancellor in this cause.
for complainants, which was affirmed by the Court of
Appeals. Petition for *certiorari* filed by the defendant,
New York Indemnity Company, was granted by this
court, and the cause has been presented in oral argu-
ment.

The New York Indemnity Company issued a policy
of automobile liability insurance to Wm. R. Moore Dry
Goods Company, Incorporated, covering a number of
automobiles owned by that Company, as well as auto-
mobiles owned by officers and salesmen of that Company.
The policy contains a clause providing, ''The insolvency
or bankruptcy of the Assured shall not relieve the Com-
pany from the payment of the indemnity provided by
the Policy, but shall entitle the claimant to maintain an
action against the Company for the recovery of such in-
demnity.''

Complainants were injured in a collision with one of
the automobiles of the Wm. R. Moore Dry Goods Com-
pany, covered by the policy, and secured judgments for
damages in the aggregate sum of $3,000 against G. W.
Thomas, a traveling salesman of the Wm. R. Moore Dry
Goods Company, who was driving the latter's automo-

bile when the injuries were inflicted upon complainants. The insolvency of Thomas having been determined by a *nulla bona* return of the executions issued against him, this suit was instituted against the insurer under the clause of the policy hereinabove quoted.

The policy of insurance refers to the Wm. R. Moore Dry Goods Company as the "named Assured." It obligates the insurer "to extend the Insurance provided by the Policy so as to be available in the same manner as to the named Assured and under the same conditions to additional assureds not hereinafter excepted."

The policy of insurance defined the term "additional assureds" as follows:

"B. The words *Additional Assured (s)* used in the Insuring Agreements shall mean (a) any person (s) while riding in or legally operating an automobile insured hereunder, or (b) any person, firm, or corporation legally responsible for the operation thereof, providing such use or operation is with the permission of the named Assured, or, if the named Assured is an individual, with the permission of an adult member of his family other than a chauffeur or domestic servant."

This definition is followed by certain exceptions and exclusions which are not material to this opinion.

In the declaration of the named assured "of the use to which the automobile covered will be applied," which declaration is a part of the policy, "private use" is stipulated as well as "business calls."

Complainants' suit is predicated upon the theory that at the time of the accident in which complainants were injured, the driver, G. W. Thomas, operating an automobile of the named assured, which was covered by the policy, was entitled to the protection of the policy as an

"additional assured," and that, the insolvency of Thomas having been ascertained, complainants were entitled to proceed against the insurer for the recovery of the indemnity to which Thomas, as an "additional assured," was entitled under the terms of the policy.

The defense interposed is that, at the time of the accident and injury, Thomas was not operating or using the automobile with the permission of the named assured; and, having taken the automobile from the owner without permission, he had committed the felony denounced by Acts of 1921, chapter 17, and was, therefore, operating the automobile illegally. The insurer insists, therefore, that Thomas, at the time of the accident and injury, was not an "additional assured," within the terms of the policy.

A jury was demanded by complainants, and an issue of fact was submitted to a jury, calling for a response whether the automobile, driven by Thomas, was being used or operated at the time of the accident with the permission of the Wm. R. Moore Dry Goods Company. At the conclusion of the evidence offered by complainant, consisting of the testimony of the President of the Wm. R. Moore Dry Goods Company and the deposition of G. W. Thomas, defendant moved for a directed verdict in its favor. After argument of this motion, the Chancellor discharged the jury, entertaining the view that the evidence had developed no controverted question of fact, and that under the uncontroverted evidence the right of complainants to a recovery depended only upon the proper construction of the contract of insurance, which was a question of law.

The facts are that the Wm. R. Moore Dry Goods Company, operating a wholesale dry goods business in Mem-

157 Tenn.—20.

phis, Tennessee, assigned G. W. Thomas as its traveling representative and salesman in a section of southern Mississippi. The automobile in question was purchased by the Wm. R. Moore Dry Goods Company about three weeks before the date of the accident, and was assigned to Thomas for his use in covering his territory. He was specifically instructed that he should not use the automobile for his own pleasure or private purposes. The expense of the operation and upkeep of the automobile were paid by his employer. The accident in which complainants were injured occurred on the evening of Thursday, August 27, 1927. During that week a Merchants' Convention was held in Memphis, attended by retail merchants in the Memphis business territory, and for which all salesmen of the Wm. R. Moore Dry Goods Company were called in.

The immediate superior officer of G. W. Thomas was the sales manager. The testimony is that Thomas was the custodian of the automobile, "under the supervision of the sales manager." Thomas had not previously brought the particular automobile here involved to Memphis, but when he had come to Memphis for week ends with automobiles previously assigned to his use, he had stored such automobiles in a public garage patronized by the Wm. R. Moore Dry Goods Company, and had delivered the claim check therefor to the sales manager.

When Thomas came to Memphis for the Merchants' Convention he brought with him the automobile in question and stored it in the public garage above referred to, and delivered the claim check to the sales manager. He testified that this was required in order that other salesmen or employees of the Company might use the car in the entertainment and accommodation of visiting

customers of the Company. The Convention closed on Thursday, August 27th. Before 8 o'clock that morning Thomas procured the claim check for the automobile from the sales manager, and drove to the railroad station with three of the departing customers of the Company who had been attending the Merchants' Convention. There is no evidence that Thomas stated to the sales manager that this was the purpose for which he desired the claim check and the automobile. With reference to his use of the car during the week, Thomas testified: "I always reported to Mr. Aldridge (the sales manager) that I was taking Mr. Williams out for a drive, or whichever one it was that wanted to go." But with reference to his action in obtaining the claim check for the automobile on Thursday morning, Mr. Thomas testified as follows:

"Q. 211. How many times did you take it out of the garage that day? A. I went over that morning at 7:30, when the store opened and got the car. I went down to the Chisca Hotel and took Mr. Brown Williams and Mr. and Mrs. K. E. Windham and carried them to the depot.

"By Mr. Winchester:

"Q. 212. And then brought the car back? A. Yes, sir.

"Q. 213. Where did you get the ticket when you got it? A. I got it from Mr. Aldridge.

"Q. 214. Mr. Aldridge didn't hand you the ticket; you had a place to leave it? A. I don't know how he kept it. I just told him I wanted the ticket for the car and he just handed it to me.

"By Mr. Crabtree:

"Q. 215. They knew you had the car and knew that you had the ticket, didn't they? A. They knew I could get it.

"Q. 216. There was no objection made to your getting it? A. No, sir.

"Q. 217. It was stored in their name because the storage was in their account? A. When I would give him the ticket, he would put 'Geo. Thomas,' on the back, so he would know whose car it was.

"Q. 218. And this ticket was turned over to you without question, whenever you asked for it, wasn't it? A. Yes, sir.

"Q. 219. No questions asked? They knew it was your habit to go and put it in the garage and go and get it whenever you wanted it, didn't they? A. Yes, sir."

When Thomas had carried the three customers to the railroad station, he returned the automobile to the garage and again stored it in the name of the Wm. R. Moore Dry Goods Company, but retained the claim check in his possession. At 3 o'clock in the afternoon, although his duties at the store had not been entirely completed, he left without notice to his superior and again procured the automobile from the garage, by presenting the claim check which he had failed to deliver to the sales manager. He drove the automobile out the back door of the garage, and, to use his own expression, "slipped off" for the purpose of driving to Sardis, Mississippi, to visit a young lady to whom he was engaged, and whom he subsequently married. His intention to make this trip had been formed prior to the time he drove the automobile to the railroad station that morning, and he had retained the claim check in order that

he might be able to use the automobile for that purpose. Sardis was not in his territory, and the nearest point in his territory was 135 miles south of Sardis. Thomas did not expect to visit any customer of his employer, and he testified that his trip was "purely a pleasure trip." He expected to return to Memphis the same night, and did not expect to leave for his territory and work until the following Sunday. When he was asked whether he obtained permission to leave the store at 3 o'clock, he replied: "Well, if I had asked anybody's permission they wouldn't have let me go." The accident in which complainants were injured occurred near Como, Mississippi, while Thomas was driving the automobile on this trip to Sardis.

(1) The Chancellor and Court of Appeals have agreed in holding that Thomas did not relinquish possession of the automobile after he acquired such possession by the delivery of the claim check to him by the sales manager Thursday morning. Inasmuch as the purpose of the issuance of a claim check for an automobile stored in a public garage is to evidence the right of the bearer of the claim check to remove the automobile from the garage, we agree that the retention of the claim check by Thomas, when the automobile was returned to the garage after the trip to the railroad station, was a retention of the constructive possession of the automobile itself. In this view, the action of Thomas in again presenting the claim check to the garage in the afternoon, and taking the automobile therefrom for his trip to Mississippi, was not a taking of an automobile denounced by the Acts of 1921, chapter 17. As construed by this Court in *Bailey* v. *State,* 150 Tenn., 598, 601, this statute "forbids any one not clothed with a color of au-

thority from taking and using automobiles for their own purpose.''

Acts of 19, chapter 28, provides that ''it shall be unlawful for any chauffeur or any other person to use the automobile of another without the owner's permission or consent.''

This statute was also construed in *Bailey* v. *State, supra,* as applying to ''chauffeurs and others of that class, who may be in constructive possession of automobiles.'' This restriction of the application of the statute of 1921 to persons of the class of chauffeurs would prevent the application of this statute to a salesman or business representative to whom the owner of an automobile has entrusted it for use in furtherance of the owner's business.

*(2)* Under the definition of ''additional assured'' contained in the policy, it is our opinion that Thomas must have been using the automobile at the time of the accident with the permission of the named assured, his employer, in order to entitle him to indemnity under the policy; and complainants may only recover that indemnity which Thomas could have recovered if he had satisfied the judgments rendered.

The determinative question is, therefore, whether at the time of the accident Thomas was using the automobile with the permission of his employer.

We have found no case construing the pertinent language of the policy, other than that cited in the opinion of the Court of Appeals: *Dickinson* v. *Maryland Casualty Co.,* 101 Conn., 369, 125 Atl., 866, 41 A. L. R., 500.

In the case cited the action was upon a policy which extended its protection to any person riding in or legally operating the automobile covered, and to any person,

firm or corporation legally responsible for the operation thereof, "provided such use or operation is with the permission of the named assured." Indemnity was sought for damages resulting from an accident occurring while the automobile was being driven by a person to whom it had been loaned by the owner's representative for the purpose of driving to his home for a change of clothing. Instead of driving the automobile to his home for the stated purpose, the person to whom it was loaned drove it to another part of the city, with stops at two saloons en route. At the time of the accident the driver was proceeding to a corner where he could see the city hall clock, in order to determine whether he still had time to drive to his home before returning the automobile to its owner. The policy contained a clause authorizing a suit against the insurer in the name of a claimant, in the event of the insolvency of the insured, as in the policy here involved.

The Supreme Court of Errors of Connecticut referred to this clause as evincing a double purpose of the policy "to protect any person injured by the operation of the car by giving him a cause of action against the insurer for injuries deemed by the law to have been caused by the operation of the car."

The court then stated that the question of liability was controlled by the proper construction to be given the language of the policy: "Provided such use or operation is with the permission of the named assured." The question was stated by the court: "Does this language mean the permission to use the car or the permission to use the car in a specified manner and for a specified purpose?"

The person injured, or the "claimant," in the case cited, was a guest of the driver to whom the automobile had been loaned. In the opinion the court, therefore, emphasized the purpose of the named assured to provide indemnity "for his guest or family or the guest or family of him to whom the insured gave the permission" to use the car, which purpose was evidenced by the provision of the policy giving a right of action to the claimant against the insurer, in the event of the insolvency of the insured. The court then held that this object would be defeated if the policy should be so construed as to put the guest of the driver to the necessity of ascertaining the limitations of the driver's permissive use of the automobile, and to endeavor to see that such limitations were observed.

The court did not in express language answer the broad alternative question hereinbefore quoted, but held, with respect to the proof of the driver's operation of the car, that "these slight deviations from the route to his home, in a swiftly moving automobile, are too unimportant to have attached to them by construction the import of annulling the protective features of this insurance policy." The affirmative response which the Supreme Court gave to the Superior Court was to the latter's inquiry whether the permission given by the owner's representative to the driver of the automobile brought the driver within the terms and meaning of the provisions of the policy at the time the injuries were received by the claimant.

The case cited was accordingly referred to by the Annotator of the American Law Reports (vol. 41, p. 509), as holding "that a permission to use the car to go to one's home was not annulled, so as to render the

clause inapplicable, by slight deviations, amounting to little more than a mile in taking two friends to their homes."

Also, in Blashfield's Cyclopedia of Automobile Law (1927), vol. 3, p. 2637, the case of *Dickinson* v. *Maryland Casualty Company, supra,* is referred to as holding that "where an automobile liability insurance policy extended indemnity to third parties driving with assured's permission, and permitted suit against the insurer by persons injured by the operation of the car, slight deviations, by one permitted by the insured to drive home to change his clothes, from the route to the home of the driver does not destroy the insurer's liability for injuries to a guest of the driver."

In construing the policy we think the Supreme Court of Connecticut correctly placed emphasis upon the purpose of the named insured to protect any person injured by the operation of the car by giving him a cause of action against the insurer, in the event of the insolvency or bankruptcy of the person responsible in law for injuries inflicted in the operation of the car. This object or purpose is in accord with the trend of public opinion, which, in some jurisdictions, has resulted in legislation requiring owners and operators of automobiles to carry insurance for the protection of persons who may be injured by their operation.

The logical result of the reasoning employed in the opinion in *Dickinson* v. *Maryland Casualty Company, supra,* is to construe the language of the policy so as to afford indemnity to persons using the automobile covered by the policy with the permission of the named insured, regardless of whether the permission extended to its use in the particular manner and at the particular

place which produced the accident and resultant injury. When the accident occurred, which was involved in the case cited, the automobile was being used for a purpose and at a place not within the contemplation of the owner or named insured when his automobile was delivered to the driver or bailee.

*(3)* "Where words are so used in the contract of insurance that their meaning is ambiguous or susceptible of two interpretations differing in import, that interpretation which will sustain the claim of the policyholder and cover the loss should be adopted." *Laue* v. *Grand Fraternity,* 132 Tenn., 235, 247; *Life Ins. Co.* v. *Galbraith,* 115 Tenn., 471, 483.

When two interpretations of an ambiguous clause of an insurance contract are fairly and reasonably possible, and one will render the extent of the insurer's liability indefinite and uncertain, we think also that preference should be given to that interpretation which will not involve the rights of the parties in doubt and uncertainty. If the application of the contract to a particular injury is made to depend upon the extent to which the driver of an automobile deviated from the permissive use authorized by the owner, the test of liability will be necessarily variable and uncertain. There is surely room for difference of opinion as to whether the deviation shown in *Dickinson* v. *Maryland Casualty Company, supra,* was "slight" and unimportant, or substantial and material, when it included visits to two saloons in each of which the driver of the automobile had "some drinks."

*(4)* It is our opinion that the words "providing such use or operation is with the permission of the named assured" were intended to exclude from the protec-

tion of the policy a person who should take the automobile and use it without permission or authority in the first instance. If, however, the automobile covered by the policy is delivered to another for use with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession.

The facts stated hereinabove bring the driver of the automobile at the time of the accident within the protection of the policy, as herein construed, as an "additional assured." His use of the car at the time of the accident followed the delivery of possession to him by his employer, acting through the sales manager.

It results that the decree of the Court of Appeals will be affirmed.