## COMMERCIAL STANDARD INS. CO. v. MAHAN et al.

### Civ. A. No. 5838.

United States District Court
W. D. Oklahoma.

Oct. 2, 1953.

---

Duke Duvall, Oklahoma City, Okl., for plaintiff.

Mont F. Highley, Jr., Oklahoma City, Okl., Taylor & Simpson, Norman, Okl., and Looney, Watts, Ross, Looney & Smith, Oklahoma City, Okl., for defendants.

WALLACE, District Judge.

The plaintiff, Commercial Standard Insurance Company, a Texas corporation, brings this action for a declaratory judgment against defendants, James Wilburn Mahan, Patricia Ann Gulsvig, and Mollie Lankford as grandmother and next friend of Doyle Ray Lankford, Bobby Lankford and Jimmy Lankford, minors, all defendants being citizens of Oklahoma, to determine the liability, if any, of the plaintiff insurance company in regard to a public liability policy issued to defendant Patricia Ann Gulsvig.

The questioned liability centers around an automobile accident which occurred April 1, 1953, involving a 1953 Ford owned by defendant Gulsvig but driven by defendant Mahan which accident took the life of Billy Lankford a passenger in the car.[1]

The plaintiff company stipulates it issued a public liability policy to defendant Gulsvig on her 1953 Ford and that such policy was in effect at the time her car was involved in the accident in question. However, plaintiff urges that the driver of the Gulsvig car, Mahan, did not have permission, express or implied, to drive said car at the time of the accident; consequently, plaintiff requests this Court to declare that Mahan was not an "insured"[2] under said policy and to adjudge that the accident in question was in no way covered by the policy issued by the plaintiff; plaintiff further seeks a finding that it is under no duty to defend any pending or future court actions brought against any of the defendants as a result of such accident.

Defendant Gulsvig asserts that Mahan did not have her permission to drive the car at the time of the accident; in her cross-claim Gulsvig asks the Court to find that Mahan took the car without her permission, and requests the Court to decree that the plaintiff insurance company is bound to defend any action and pay any judgment, within policy limits, in pending or future lawsuits against Gulsvig arising out of this accident.

Defendant Mollie Lankford, next friend of the minor children whose fa-

---

1. Defendant Mollie Lankford has filed Case No. 130,446 in the District Court of Oklahoma County, Oklahoma, which is now pending, against Patricia Ann Gulsvig, for the benefit of the three minor defendants to recover damages for the wrongful death of Billy Lankford, father of said minor defendants.

2. The policy provides: "*Definition of Insured:* With respect to the insur-ance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is by the named insured or with his permission. * * *"* (Emphasis supplied.) (See PX–1.)

ther was killed in said accident, asserts that Mahan did have the permission of Gulsvig to drive her car at the time of said accident and that consequently Mahan was "insured" under the issued policy and for whose negligence the plaintiff must stand responsible.

Two witnesses testified in regard to the facts surrounding the question of whether Mahan was driving Gulsvig's car at the time of the accident with Gulsvig's permission; one was Mrs. Gulsvig, who testified in person; the other was Mahan who testified by deposition.

Both witnesses agreed that Mrs. Gulsvig and Mahan met for the first time a day or two before the accident; that on the morning of the accident Mahan drove Mrs. Gulsvig some eight blocks to work from her place of residence at the Cliff House located in the five hundred block on Northwest Fourth in Oklahoma City, and immediately returned her car to the Cliff House for use by Mrs. Gulsvig's mother; that in the evening, after work, Mrs. Gulsvig and Mahan drove around and visited several places of entertainment in downtown Oklahoma City; that they returned to the Cliff House sometime around 11:00 p. m.

At this point the testimony of the two witnesses comes into sharp conflict. Mrs. Gulsvig insists she then told Mahan good-night and stepped into her apartment to bathe and retire for the night; and, that she first learned Mahan had taken her car keys when she was awakened early the next morning by her landlady and advised that her car had been involved in an accident. Contrarily, Mahan testifies that about 11:00 p. m. Mrs. Gulsvig gave him the keys to her car and asked him to get her some cigarettes and a sandwich.

Regardless of this disagreement in testimony the Court is of the opinion that taking as true the testimony of either witness that Mahan, at the time of the accident near Moore, could not have been driving the car with the owner's permission.

The evidence indicates that Mahan after leaving the Cliff House in Mrs. Gulsvig's car, spent a considerable amount of time visiting with his brother and playing a pinball machine; that subsequently he went to a place called Bill's Cafe at 215 West Reno where he purchased a sandwich and some cigarettes; that shortly thereafter Mahan met Lankford, the deceased, and consented to drive Lankford to Norman, Oklahoma, supposedly for the purpose of borrowing some money from Lankford's sister; that while en route to Norman the accident in question occurred some ten or twelve miles out from Oklahoma City.

■ Although the authorities are split upon the question of just when "permission" originally given by a car owner ceases,[3] the Oklahoma rule is clear that once the borrower of the car deviates distinctly and substantially from the scope and purpose of the grant-

---

3. There are two general views, both of which are supported by substantial authority. First, that for the use or operation of the car to be with the "permission" of the named insured, permission must have been given, impliedly at least, not only for the original taking of the car but also for the particular use being made of the car at the time in question. Frederiksen v. Employers' Liability Assur. Corp., 9 Cir., 1928, 26 F.2d 76; Trotter v. Union Indem. Co., 9 Cir., 1929, 35 F.2d 104; Truex v. Pennsylvania Manufacturers' Ass'n Casualty Ins. Co., 1935, 116 Pa.Super. 551, 176 A. 756. Second, that for the use or operation of the car to be with the "per- mission" of the named insured, permission need only have been given to take and use the car in the first instance and regardless of deviation from original purpose so long as the car remains in the possession of the one originally granted permission to take the car the omnibus clause of the policy covers the accident. Dickinson v. Maryland Casualty Co., 1924, 101 Conn. 369, 125 A. 866, 41 A.L.R. 500; Peterson v. Maloney, 1930, 181 Minn. 437, 232 N.W. 790; Stovall v. New York Indemnity Co., 1928, 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368. See MacBey v. Hartford Accident & Indemnity Co., 292 Mass. 105, 197 N.E. 516, 106 A.L.R. 1248.

ed permission the driver of the car is no longer deemed to be driving the automobile with the consent of the car owner and named insured.[4]

■ The evidence, regardless how interpreted, establishes beyond controversy that Mahan at the time of the accident was not driving the car with Gulsvig's permission. Conceding Mahan's statement be true—permission to go for cigarettes and a sandwich could in nowise authorize a trip to Norman, Oklahoma.[5]

■ The plaintiff insurance company is entitled to a finding that Mahan, the driver of the car in question, was not an "insured" covered by the policy in question and is not entitled to have the plaintiff defend him in any action or claim arising out of said accident; plaintiff is further entitled to a finding against defendant Mollie Lankford as grandmother and next friend of defendant minors that the policy in question in no way covers the said accident. However, irrespective of this, plaintiff is not entitled to a finding against Mrs. Gulsvig to the effect that plaintiff has no obligation to defend Mrs. Gulsvig in connection with any public liability claims or lawsuits arising out of the aforesaid accident.[6]

4. In Indemnity Ins. Co. of North America v. Sanders, 1934, 169 Okl. 378, 36 P.2d 271, 272, 273, in referring to the scope of the permission granted the Court said: "If he [the driver] was going to or from the transaction of said business for which he had permission, then liability would surely exist; but if he had departed upon a mission of his own entirely apart from which he had permission to use said car, then an entirely different question is presented for consideration. * * * The question of whether the person had authority or permission to operate the car 'must be deemed to refer to the operation of the car at the time the liability, if any, arose.' [Citing case.]" See also Indemnity Ins. Co. of North America v. Lahman, 1934, 169 Okl. 380, 36 P.2d 274, which arose out of same accident as Sanders case, supra.

5. Doubtless, Oklahoma follows the rule that "slight deviations" from the route to the place to which the driver asked for and received permission do not annul such permission. See Dickinson v. Maryland Casualty Co., note 3, supra. As mentioned by Judge Huxman in Employers Casualty Co. v. Williamson, 10 Cir., 1950, 179 F.2d 11, 13: "In Lloyds America v. Tinkelpaugh, 184 Okl. 413, 88 P.2d 356, the Oklahoma Supreme Court discusses the three rules under the usual omnibus clause as to the extent of deviation from granted permission to use the insured vehicle necessary to prevent the user from becoming an additional insured under such clause. These rules are stated to be as follows: (1) those holding any deviation, no matter how slight, will defeat liability; (2) those holding that once permission is given, it will extend to any and all uses of the car; and (3) those holding that slight deviation does not violate the omnibus clause. In the Lloyds case, the Oklahoma Court gives its adherence to the third rule and holds that a slight deviation does not violate the permissive use so as to prevent the application of the omnibus clause." However, the facts in the instant case indicate that much more than a slight deviation occurred; that Mahan had literally departed upon a mission of his own completely unrelated to the original permission granted.

6. Although the Court in Till v. Hartford Accident & Indemnity Co., 10 Cir., 1941, 124 F.2d 405, 408, was passing upon the issue of whether an "actual controversy" existed under the Declaratory Judgments Act, 28 U.S.C.A. §§ 2201, 2202, it made the following statement which is directly in point: "Small [the named insured] sought a judgment [by way of counterclaim] against Hartford adjudging that it was obligated, under its policy, to defend any actions against her, present or future, arising out of the accident, and to pay any judgments that had been or might be rendered against her in such actions. * * * *A declaratory judgment that the accident was not within the coverage of the policy would not relieve Hartford from the duty of defending any actions pending or which might be brought against Small.* Thus, it will be seen that there was an actual controversy between Hartford and Small both as to the coverage of Woodward as an insured and the obligation of Hartford to defend any actions brought against Small [citing case]." (Emphasis supplied.)

Although under the conclusions of this Court in this declaratory judgment action Mrs. Gulsvig is in no way legally responsible for the accident in question and doubtless the findings in this action may be pleaded by way of res judicata in any pending or subsequent court action,[7] nonetheless, under the terms of the policy the plaintiff insurance company bound itself to "defend any suit against the insured [Gulsvig] alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *."

 Parenthetically, a contention is made that apart from the question of permission that Mrs. Gulsvig is liable for Mahan's acts inasmuch as Mahan's driver's license had expired. 47 Okl.St. Ann. § 308 provides:

"Any person as herein defined, who is the owner of any motor vehicle and knowingly permits such motor vehicle to be operated by any person who is not qualified to operate a motor vehicle under the provisions of this Act, shall be held civilly liable as a joint tort feasor for any unlawful act committed by such operator."

This statute creates no liability in the instant case for the reason there is no showing that Mrs. Gulsvig permitted Mahan to operate her car *knowing* that Mahan's driver's license had expired and thus was "not qualified to operate a motor vehicle" in Oklahoma. Knowledge of disqualification is a necessary ingredient of statutory liability arising out of this section and such knowledge must be established by the one seeking to prove liability.[8]

Counsel should submit a journal entry to conform with this opinion within ten days.

---

7. Judge Phillips in the Till case, 124 F.2d at page 408, in ruling that a federal statute prohibited the issuance by the District Court of injunctive relief to prevent the relitigation of issues determined in a declaratory judgment said: "The declaratory judgment in the instant case with the injunctive provisions eliminated would not prevent the prosecution of actions in the state court against Small [the named insured]. *That judgment might only be pleaded as a defense thereto under the doctrine of res judicata.* See Toucey v. New York Life Insurance Co., [314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100]." (Emphasis supplied.)

The effect of the Toucey case, supra, is that the federal courts may not use their injunctive powers to save the defendants in the state proceedings the inconvenience of pleading and proving res judicata.

Mr. Justice Murphy in Maryland Casualty Co. v. Pacific Coal & Oil Co., 1941, 312 U.S. 270, 274, 61 S.Ct. 510, 512, 85 L.Ed. 826, in ruling in a factual situation analogous to the instant case that a controversy existed under the Declaratory Judgments Act gave the following reason: "If we held contrariwise as to Orteca [plaintiff in state court action] because, as to him, the controversy were yet too remote, it is possible that opposite interpretations of the policy might be announced by the federal and state courts. For the federal court, in a judgment not binding on Orteca might determine that petitioner [insurance company] was not obligated under the policy, while the state court, in a supplemental proceeding by Orteca against petitioner, might conclude otherwise."

The unmistakable inference to be drawn from this just quoted statement is that in an action like the one at bar there is a controversy over which the federal court has jurisdiction and the court's final determination becomes res judicata as to all persons made parties to the federal court action.

8. Willingham v. Panick, 10 Cir., 1947, 161 F.2d 614; Greenland v. Gilliam, 1952, 206 Okl. 85, 241 P.2d 384.