Charlie Edward **FARMER**, **Lucy Mae Hamlett**, **Evelyn Johnson**, **Grady Harris**, **Mary Jennings**, **Otis Hamlett**, **Ollie Pearl Brandon**, an infant, **Lena Mae Johnson**, an infant, **Robert Harris**, an infant, **Willie Jennings**, an infant, and **Lottie Pearl Hamlett**, an infant, Appellants,

v.

The **FIDELITY & CASUALTY COMPANY OF NEW YORK**, a corporation, Appellee.

No. 7457.

United States Court of Appeals Fourth Circuit.

Argued Oct. 14, 1957.

Decided Oct. 18, 1957.

Jerry H. Luck and Andrew C. Muse, Danville, Va. (Williams & Luck, Danville, Va., on the brief), for appellants.

Edwin B. Meade, Danville, Va. (Meade, Talbott & Tate, Danville, Va., on brief), for appellee.

Before PARKER, Chief Judge, and SOBELOFF and HAYNSWORTH, Circuit Judges.

SOBELOFF, Circuit Judge.

An interpretation of the omnibus clause of a public liability insurance policy is the object of a suit for declaratory judgment filed in the District Court for the Western District of Virginia by The Fidelity and Casualty Company of New York. Defendants are Moses Jeffreys, the automobile owner, who is named as the assured in the policy; his son, Walter, and his nephew, James Jeffreys. Joined with them as defendants are the plaintiffs in several actions for personal injuries previously instituted against the three Jeffreys.

Moses Jeffreys lives on a farm near Milton, North Carolina, with his wife and his eighteen-year-old son, Walter, who assists in the operation of the farm and attends school. The automobile in question is the sole property of Moses Jeffreys, and his name alone appears in

the policy. From time to time, Walter was permitted by his father to use the automobile; but both father and son testified unequivocally that Walter was always required to ask permission before each use of the automobile, and that he was frequently admonished by his father never to lend it to anyone or to let anyone else drive it.

While the insurance was in force, on May 12, 1956, having requested and received his father's permission, Walter drove the automobile from the farm to Milton, North Carolina. There he met his cousin, James Jeffreys. Despite the strict prohibition which, according to the uncontradicted evidence, the father had imposed, Walter and his cousin James exchanged automobiles. James proceeded, for an undisclosed purpose, to Danville, Virginia, in his uncle's automobile, which he apparently preferred because it was newer than his. Whatever the explanation for this exchange, it had nothing to do with any purpose of Moses Jeffreys, who was unaware of the event until later, when it was reported to him that his automobile had been in a collision. An accident and resulting injuries to a number of persons occurred while the automobile was operated by the nephew, James, as he was returning from Danville, Virginia. Walter was not then in the car, and the mission in which James was engaged was not one for Walter. The suits which followed were against Moses, Walter, and James Jeffreys. There being diversity of citizenship, the Insurance Company brought this action in the District Court to obtain an adjudication that it was not liable under the omnibus clause of the policy to defend James in the damage suits or to pay any judgments that might be recovered against him.

The policy contains the following definition of "insured":

"(a) With respect to the insurance for bodily injury liability and for property damages liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

Finding the basic facts as above recited, the Judge held that James Jeffreys was not operating the automobile as the agent of either Moses or Walter; that Walter was not legally responsible for the use of the automobile at the time of the accident, and that James was not using it with the express or implied permission of Moses Jeffreys, the owner and insured, or of his spouse. The District Court then passed an order declaring that the Insurance Company was not required to defend the suits against James Jeffreys or to pay any judgments against him.

■ On appeal, the heaviest attack against the District Court's action is predicated on the alleged insufficiency of the evidence to support the finding that the father had so restricted the use of the automobile by the son as to preclude the latter from allowing his cousin James to drive it. We think the evidence amply supports the Judge's finding. True, the fact that the evidence was uncontradicted would not compel its acceptance by the District Judge; but as it was credited by him, there is no basis whatever for this Court to set aside his finding. We certainly would not be warranted in substituting a state of facts opposite to those established to the District Judge's satisfaction upon uncontradicted evidence. His conclusion is not inherently unreasonable in the circumstances and is, in law, entitled to stand undisturbed, for it is not clearly erroneous.

■■ Writing for this Court, Judge Dobie said, in Chatfield v. Farm Bureau Mutual Automobile Insurance Company, 208 F.2d 250, 256: "Our own decisions, we think, show a strong tendency toward liberal interpretation, in favor of the insured, of the 'omnibus clause' * * * "

to " * * * reflect a clear-cut policy to protect the public." This also is the spirit of the decisions in North Carolina, the State whose law governs this case, since the insurance policy was written and delivered there. MacClure v. Accident and Casualty Insurance Company, 229 N.C. 305, 49 S.E.2d 742; Hooper v. Maryland Casualty Company, 233 N.C. 154, 63 S.E.2d 128; Howell v. Travelers Indemnity Company, 237 N.C. 227, 74 S.E.2d 610.

■ With substantial accord, Courts have laid down the reasonable rule that permission need not be express but may be implied from circumstances. For example, when the owner of an insured automobile was in jail and his brother drove the car to the mother's home to arrange for her presence at the owner's trial, the mission being one so clearly in his interest, the circumstances were held to imply permission, although the insured had no actual knowledge of the use being made of the automobile. American Automobile Insurance Company v. Fulcher, 4 Cir., 1953, 201 F.2d 751. So, also, if one were suddenly to become ill and fall unconscious, even a volunteer undertaking to use that person's automobile to bring medical help, would hardly be deemed beyond the coverage of the omnibus clause on the ground that the insured had not expressly authorized the use. Permission could fairly be implied from the circumstances. We know of no case, however, that goes to the extent of allowing an inference of permission in defiance of uncontradicted testimony, accepted in the District Court, that permission was not only withheld but that lending was specifically forbidden. Even a liberal construction of the policy's provisions will not justify disregard of its plain limitations.

■ James Jeffreys and the injured persons further contend that as an additional premium was charged to permit any person under twenty-five years of age, who lived with the insured, to operate the automobile, the effect was to extend coverage to the circumstances of this case. We do not agree. The additional premium was to cover the extra risk thought to inhere in the contemplated driving by a youthful person. It did not make Walter a "named insured," or have the effect of empowering him to allow the use of his father's car by his cousin James contrary to the express prohibition of the named insured.

Without multiplying citations, the proper approach to the interpretation of the omnibus clause may be illustrated by two cases recently decided by this Court, one upholding the assertion of coverage and the other denying it. The first, Young v. Farm State Mutual Insurance Company, 244 F.2d 333, was governed by Tennessee law, which is said to be most liberal in this regard. See Stovall v. New York Indemnity Company, 1928, 157 Tenn. 301, 8 S.W.2d 473, 72 A.L.R. 1368. The omnibus clause was held not to provide coverage where the driver had been entrusted with the automobile of the insured, but under definite instructions, which were violated, not to remove it from the vicinity of Bristol, Tennessee, and particularly not to take it to Portsmouth, Virginia, to visit his wife, as he had done without permission on a former occasion. Judge Soper pointed out that the bailee had no unlimited general custody of the insured automobile, but was given possession for the special and limited purpose of selling it within a restricted area. When the bailee drove the car to a distant city, in direct violation of the owner's instructions, we held that it could not reasonably be said that he was acting with the "permission" of the owner.

In the second case, Utica Mutual Insurance Company v. Rollason, 246 F.2d 105, we applied Virginia law which in respect to the present inquiry is not more liberal than that of North Carolina. There the District Court found as a fact that the employee to whom the automobile had been entrusted was specifically authorized by the named insured to use it for family purposes including use by his son for personal purposes. We upheld coverage under the omnibus clause. In the case before us, the factual finding

189

is precisely to the contrary, namely, that there was no permission to Walter to lend the car to anyone, but that he loaned it to his cousin in direct contravention of his father's orders.

We are not unmindful of the weighty considerations which indicate the desirability, from a public standpoint, of requiring insurance coverage broad enough to protect all who suffer injury from any use of an insured automobile, except perhaps by a thief, or even then. Such all-inclusive coverage, however, cannot be judicially imposed against the plain and legally unforbidden restrictions contained in an insurance policy. The command for universal coverage, if such it is to be, must come from the legislature. North Carolina has enacted no such sweeping legislation, and it is conceded that North Carolina's requirements as to the character of the omnibus clause in policies issued in that State have been fully met by the insurance policy here in suit.

Affirmed.