## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Plaintiff–Appellee,

v.

## Roland WITT, Defendant–Appellant.

Supreme Court of Tennessee, at Knoxville.

June 1, 1993.

Rehearing Denied July 6, 1993.

Michael R. Campbell, Campbell & Campbell, Chattanooga, for plaintiff-appellee.

David W. Noblit, Ted C. Raynor, Chattanooga, for defendant-appellant.

## OPINION

REID, Chief Justice.

Tennessee Farmers Mutual Insurance Company filed suit for declaratory judgment that the policy of insurance issued to Roland Witt provided no coverage for collision damage sustained to a rental automobile operated by Witt while under the influence of alcohol. On cross motions for summary judgment, the trial court granted Witt judgment declaring there was coverage; the Court of Appeals reversed, holding there was no coverage. The record supports the trial court's construction of the insurance contract that there was coverage.

Tennessee Farmers Mutual issued to Roland M. Witt and his wife Karen C. Witt a policy of insurance covering four vehicles. The policy provided liability, medical payments and uninsured motorist coverage for all four vehicles and, in addition, comprehensive, collision, rental reimbursement,

and emergency road service coverage for three of the vehicles. The policy also provided comprehensive, collision and emergency road service coverage for vehicles described in the policy as "other autos." With regard to such coverage for the use of other autos, the policy states:

> The coverages D, G and H you have on your auto extend to a loss to a newly acquired auto, a temporary substitute auto or a **non-owned auto.** These coverages extend to a **non-owned auto** while it is driven by or in the custody of the first person named in the Declarations, his or her spouse or **family member.** Its use has to be within the scope of the consent of the owner.

> A **non-owned** auto means a
> 1. private passenger car; or
> 2. pickup, panel or van body of load capacity of 1,500 pounds or less;
> that is not:
> 1. owned by,
> 2. registered in the name of, or
> 3. furnished or available for the regular or frequent use of you, your spouse or any family member.

(Emphasis in original.)

While Witt and a fellow employee, Robert Michalski, were on business for their employer, Michalski leased an automobile from a Hertz rental agency. The rental agreement provides that the relationship created with regard to the leased vehicle was that of a bailment. The agreement defines an "authorized operator" of the vehicle to include the lessee's fellow employees who are at least 25 years of age and have a valid driver's license. Other pertinent provisions of the agreement are as follows:

4. *RESPONSIBILITY FOR LOSS OF OR DAMAGE TO THE CAR.*

> If the car is used as permitted by the terms and conditions of this agreement, the following applies:

> (a) You are responsible for any and all loss of or damage to the car resulting from any cause other than accidental fire or acts of nature (for example: collision, rollover, theft or vandalism).

. . . . .

> (d) If at the beginning of the rental you accept the optional loss damage waiver, which is not insurance, Hertz will not hold you responsible for loss of or damage to the car.

5. *PROHIBITED USES OF THE CAR.*

> Any use of the car as prohibited below will breach this agreement, will void any limitation of your responsibility under paragraph 4 and make you fully responsible for actual and consequential damages, costs and attorneys fees resulting from that breach. To the extent permitted by law, LDW, PAI and PEC, LIS and all liability protection will also be void.

> *UNDER THIS AGREEMENT YOU AND/OR ANY AUTHORIZED DRIVER MAY NOT:*

> (a) Permit the use of the car by any one other than an authorized operator;

> (b) Intentionally destroy, damage, or aid and abet in the theft of the car;

> (c) Take or attempt to take the car to Mexico or anywhere else outside of the United States or Canada;

> (d) Engage in any wilful or wanton misconduct, which among other things, may include reckless conduct such as: use when overloaded, to carry persons or property for hire, or off regularly maintained roads or leaving the car and failing to remove the keys or close and lock all doors, windows and trunk, and the car is vandalized or stolen;

> (e) Use or permit the use of the car by anyone:

> (1) Under the influence of alcohol or drugs;

> (2) For any purpose that could properly be charged as a felony, such as the illegal transportation of persons, drugs, or contraband;

> (3) To tow or push anything;

> (4) In a speed test or contest;

> (5) In driver training activity; or

> (6) If the car is obtained from Hertz by fraud or misrepresentation.

The agreement also contains the following provision immediately above the signature line:

If you decline the *optional* loss damage waiver (LDW) you may be responsible for any vehicle loss or damage regardless of fault. Your own auto insurance may cover all or part of such damage. You may want to check before accepting LDW. By signing below you represent to have read and understand the above, and all terms and conditions contained in paragraphs 1 through 14 of this agreement and that you agree to them.

(Emphasis in original.)

The lessee, Michalski, accepted the loss damage waiver, essentially collision insurance though stated not to be, which relieved the lessee from responsibility for damage to the vehicle, except that caused by a "prohibited use."

Under Witt's insurance contract with Tennessee Farmers Mutual, the risks of loss insured against included collision damage that could be caused by Witt's operation of "a non-owned auto." Under the policy, a "non-owned auto" is limited in type and size to private passenger vehicles, small trucks and vans not owned or registered to the insured or regularly available to the insured or a family member. For the purposes of summary judgment, the vehicle was a "non-owned auto" within the meaning of the insurance policy and Witt was an "authorized operator" under the terms of the rental agreement.

The leased vehicle was damaged in a one-vehicle accident which occurred while Witt was operating the vehicle with the permission of Michalski. At the time of the accident, Witt was under the influence of alcohol.

Hertz has filed a separate suit against Witt for recovery of the damages sustained to the vehicle, on the ground that operating the vehicle while under the influence of alcohol was a prohibited use within the meaning of paragraph 5 of the rental contract thus voiding the lessee's limitation of responsibility for damages. Witt has called upon Tennessee Farmers Mutual to defend the suit and assume responsible for any judgment for damages sustained to the vehicle. Tennessee Farmers Mutual has denied coverage and filed this suit.

Tennessee Farmers Mutual contends that the operation of the vehicle while under the influence of alcohol was not use of the vehicle "within the scope of the consent of the owner" as required by the insurance contract and, therefore, coverage was excluded. It implicitly acknowledges that the policy extended coverage to the leased vehicle as "a non-owned auto" while operated by Witt, except when Witt was under the influence of alcohol. Its argument apparently is that coverage ceased at such time as the insured became under the influence of alcohol because he then no longer had the owner's consent to operate the rental car.

Witt contends that he, being an authorized driver within the meaning of the rental contract, had the consent of the owner of the vehicle within the meaning of the insurance contract, and, therefore, coverage was not excluded. Witt's position is that the "scope of the owner's consent" clause refers to the owner's permission to use the vehicle rather than the circumstances under which it may be used.

The determinative issue, therefore, is the construction of the provision in the insurance policy, "within the scope of the consent of the owner," and the application of that provision to the facts of this case. Stated another way, the issue is whether the loss was within the risk contemplated by the terms of the insurance contract. The issue presented is a question of law; consequently, the scope of review is *de novo*. *See Hamblen Co. v. City of Morristown*, 656 S.W.2d 331, 335–36 (Tenn.1983).

 Contracts providing collision insurance, like contracts providing other types of coverage, are construed against the insurer. As stated in *Crouch on Insurance 2d* § 42.204 (1982 and 1992 Supp.):

> A collision policy will be construed most strongly against the insurer and all doubt and ambiguity will be resolved in favor of the insured.

Collision insurance provides indemnity to the owner for damage to the insured vehicle, rather than to a third party damaged by the insured's negligence, and the right

of the owner to recover damages under collision insurance does not depend upon fault, only upon coverage. On this point, Crouch states as follows:

Collision insurance insures against the harm of collision without regard to the fact that the fault of the driver of the insured vehicle contributed to or was the cause of the collision. Otherwise stated, negligence on the part of the operator of the car does not preclude recovery.

Accordingly, the fact that the driver of the automobile was careless or negligent, or excited and confused, is no defense in an action on a policy insuring the car against loss or damage caused by "accidental collision" with any other object. That is, the word "accident" in a collision policy connotes an unexpected and unforeseen event, and does not exclude carelessness or negligence.

*Crouch on Insurance 2d* § 42.217, pp. 337–38 (1982 and 1992 Supp.).

■ Driving under the influence of alcohol, of course, is illegal and dangerous. Nevertheless, it does not necessarily preclude coverage. In this case, there would be no question about collision coverage if Witt, while under the influence of alcohol, had been operating one of his own vehicles, a newly acquired vehicle or a temporary substitute vehicle. There also is collision coverage on non-owned vehicles unless coverage has been excluded by the "scope of consent" provision of the insurance contract. Resolution of that issue depends upon the application of the circumstances under which Witt was driving, including the language of the lease agreement and Witt's being under the influence of alcohol, to the language of the insurance policy.

■ Consideration of the insurance agreement as a whole indicates an intent to limit the vehicles to which coverage was extended, rather than to limit coverage to certain uses. The "scope of consent" clause obviously requires permission to use a vehicle and thus avoids coverage to stolen vehicles and those used without the owner's authority. However, under the construction of the policy advanced by Tennessee Farmers Mutual, operation of a leased vehicle on secondary roads, in excess of the speed limit or beyond a certain distance, contrary to the terms of a lease agreement, would render the user's insurance contract ineffective. *Cf. Allstate Ins. Co. v. Sullivan*, 643 S.W.2d 21, 23 (Mo. App.1982). And, in situations such as that presented in this case, where the operator is not privy to the terms of the lease agreement, the operator would have no knowledge that the terms of his insurance contract had been rendered ineffective.

■ The purpose of the prohibited uses section of the lease agreement was to reimpose financial responsibility for damages to the vehicle upon the lessee or any authorized driver under certain circumstances. The first paragraph of that section states that any of the several uses of the vehicle prohibited by that section will void any limitation on the lessee's responsibility provided under the "loss damage waiver." The allocation of responsibility between Hertz and the lessee can hardly be found to be determinative of coverage under the contract of insurance issued by Tennessee Farmers Mutual to Witt. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." *Blaylock & Brown Const., Inc. v. AIU Ins. Co.*, 796 S.W.2d 146, 149 (Tenn.App.1990); *Tata v. Nichols*, 848 S.W.2d 649, 650 (Tenn. 1993).

Even though the loss involved in this case was collision damage sustained by the rented vehicle in a one-vehicle accident, the parties rely principally upon cases construing omnibus liability clauses. Tennessee Farmers Mutual takes the position that the prohibited use of the vehicle as defined in the rental agreement, voids all coverages, including liability as well as collision. Such construction could cause some dramatic results. The insurance policy, construed according to the insurer's contention, would provide no liability coverage for claims by third parties for personal injuries and property damage if Michalski or Witt had, prior to the accident in which the damage was sustained, intentionally damaged the vehicle, overloaded the vehicle, used it for hire,

driven it on roads not regularly maintained, used it to push another vehicle or any of the other several uses prohibited under paragraph five of the rental agreement. The treatment and uses prohibited in the rental agreement could be expected to damage the vehicle and thus provide a reasonable basis for shifting responsibility for such damage from the owner to the lessee, which was accomplished by voiding the loss damage waiver. However, those prohibited uses in many instances constitute the negligence of the insured which are the risks insured against under liability coverage.

Even if the rationale of the cases construing omnibus liability provisions should be applied to this case of collision damage, coverage would not be excluded. In *Moore v. Liberty Mut. Ins. Co.*, 193 Tenn. 519, 246 S.W.2d 960 (1952), a case in which the owner's permission limited the time, place, and purpose for which the vehicle could be used, the Court stated that the cases turn on the distinction between "general custody" and "limited permission." The Court approved those cases that,

> hold that where one has only limited permission of the owner to use the car in a specified area for a limited time and particular purpose and does not have general discretion as to the use of the car, then the coverage of the omnibus clause is not extended to his use of the car any place or for a purpose not consented to nor reasonably contemplated by the owner in giving the initial permission.

*Id.* 246 S.W.2d at 961.

In denying coverage in *Moore*, the Court distinguished that case from *Stovall v. New York Indem. Co.*, 157 Tenn. 301, 8 S.W.2d 473 (1928), in which, "a traveling salesman with general custody of his employer's automobile, was held to be covered under the omnibus clause even though he used the car for a purpose not expressly authorized by his employer." 246 S.W.2d at 961. In *Stovall*, the Court stated the rule as follows:

> It is our opinion that the words, "providing such use or operation is with the permission of the named assured," were intended to exclude from the protection of the policy a person who should take the automobile and use it without permission or authority in the first instance. If, however, the automobile covered by the policy is delivered to another for use, with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession. ·

*Id.* 8 S.W.2d at 477. In *Foley v. Tennessee Odin Ins. Co.*, 193 Tenn. 206, 245 S.W.2d 202, 203 (1951), the Court, with reference to the *Stovall* decision, stated:

> [T]his Court definitely aligned itself with a minority of the Courts wherein it is held that if permission or authority to take and use the car in the first instance is granted a party, then, even though that party goes off and uses the car for other purposes than that of initial permission, the driver of the car is covered under the "omnibus" clause.

Here, Witt's permission as an "authorized driver" to use the vehicle without limitation as to time, place, and purpose constitutes general custody of the vehicle. At the time of loss, Witt was an authorized operator. His operation of the vehicle while under the influence of alcohol did not violate any provision of the lease contract regarding time, place, or purpose of use. Nor did the circumstances of his operation of the vehicle, while under the influence of alcohol, convert the general custody bailment into one of limited permission. He still had the owner's consent to operate the vehicle, though he did not have permission to operate it while under the influence of alcohol.

Tennessee Farmers Mutual relies upon *Adkins v. White Consol. Indus.*, 788 S.W.2d 815 (Tenn.App.1989), in which the Court of Appeals reviewed the cases regarding deviation from permission under omnibus liability clauses. In that case, the driver of a vehicle leased by his employer

**32**

was involved in an accident with a third party. After the third party had obtained a judgment against the driver, but not the employer, because the driver was not acting within the scope of his employment, the driver sued the employer's insurance company claiming coverage under the employer's liability policy. The policy provided that an insured was anyone using the vehicle with the insured's permission. The court found that the accident occurred while the driver was using the vehicle for personal use contrary to the employer's strict policy and instructions that such use was outside the insured's permission within the meaning of the policy. *Adkins* is consistent with *Stovall, Moore, Foley,* and other Tennessee decisions, which recognize the difference between permission that limits the time, purpose, and place and those that limit manner of use.

 The insurance contract does not contain a clearly stated intent by the parties that Witt's collision coverage on a non-owned vehicle would be excluded under the circumstances of this case. As stated in *Stovall v. New York Indem. Co.*:

> When two interpretations of an ambiguous clause of an insurance contract are fairly and reasonably possible, and one will render the extent of the insurer's liability indefinite and uncertain, we think, also, that preference should be given to that interpretation which will not involve the rights of the parties in doubt and uncertainty. If the application of the contract to a particular injury is made to depend upon the extent to which the driver of an automobile deviated from the permissive use authorized by the owner, the test of liability will be necessarily variable and uncertain.

8 S.W.2d at 477. Any uncertainty or ambiguity in the contract will be resolved against the insurer and in favor of the insured. *Tata v. Nichols,* 848 S.W.2d at 650; *Allstate Insur. Co. v. Watts,* 811 S.W.2d 883, 886 (Tenn.1991). The contract, therefore, will be construed to provide coverage.

Accordingly, the Court of Appeals grant of summary judgment in favor of Tennessee Farmers Mutual is reversed, and summary judgment is entered for Roland Witt.

The costs are taxed against Tennessee Farmers Mutual.

DROWOTA, O'BRIEN, DAUGHTREY and ANDERSON, JJ., concur.