T. K. RIDDICK *et al.*, COMPLAINANTS, APPELLEES, *v.* YORK-
SHIRE INSURANCE COMPANY *et al.*, DEFENDANTS, AP-
PELLANTS.*

and

T. K. RIDDICK *et al.*, COMPLAINANTS, APPELLEES, *v.* NIAGARA
FIRE INSURANCE COMPANY *et al.*, DEFENDANTS, AP-
PELLANTS.

(*Nashville*, December Term, 1931.)

Opinion filed July 23, 1932.

---

*On sufficiency of title, see 25 R. C. L., 847; R. C. L. Perm. Supp.,
p. 5617; R. C. L. Pocket Part, title "Statutes," sec. 94.

As to singleness of subject, see 25 R. C. L., 841; R. C. L. Perm.
Supp., p. 5616; R. C. L. Pocket Part, title "Statutes," sec. 88.

On statute as part of contract, see 6 R. C. L., 855; R. C. L. Perm.
Supp., p. 1842; R. C. L. Pocket Part, title "Contracts," sec. 243.

T. A. Evans and J. E. McCadden, for complainants, appellees.

R. L. Bartels, for defendants, appellants.

Mr. Justice McKinney delivered the opinion of the Court.

The opinion of the Chancellor so clearly expresses our views of these causes that we adopt and make it the opinion of this Court. It is as follows:

"The purpose of the two above suits is to recover of defendants on certain policies of fire insurance. The facts are not in controversy and have been stipulated by counsel for the respective parties. The principal question presented for determination is, whether complainants are entitled to recover of defendants the full amount of insurance named in the respective policies, aggregating $45,000, or whether they are only entitled to recover the value of the buildings destroyed by fire (as of the date of the fire), to-wit, $36,546? The answer to the question made depends upon the validity of chapter 72 of the Public Acts of 1927, and, if valid, the proper construction thereof. Defendants assert said Act to be unconstitutional and void because violative of article 2, section 17, of the Constitution of the State of Tennessee, in that it contains two subjects, to-wit: (a) the regulation of contracts of fire insurance, and (b) the inspection of buildings insured to prevent overinsurance; and, also, because the body of the Act is broader than its caption. Said Act is as follows:

" 'A BILL to be entitled "An Act to regulate contracts of fire insurance in this State, to provide for the

inspection of all buildings insured, to prevent overinsurance, and to repeal Chapter 447 of the Acts of 1909.''

" 'SECTION 1. . . . That every agent within ninety days after making or writing any contract of fire insurance on any building or buildings in this State, shall cause the same to be personally inspected, and no Company, and no officer or agent thereof, and no insurance broker shall knowingly issue, negotiate, continue or renew or cause to permit to be issued, negotiated, continued or renewed any fire insurance policy upon property or interests within the State of an amount which, with any existing insurance thereon, exceeds the fair value of the property.

" 'SEC. 2. . . . That if buildings within the State insured against loss by fire are totally destroyed by fire, the Company shall not be liable beyond the actual value of the insured property at the time of the loss or damage; and if it shall appear that the insured has paid premiums on an amount in excess of said actual value, he shall be reimbursed the proportionate excess or premiums paid on the difference between the amount named in the policy and said actual value, with interest at six per cent per annum from the date of issue; and said excess or premiums and interest thereon shall be allowed the insured from the time any Companies carrying said insurance at the time of the loss have continuously carried the insurance on the destroyed buildings, whether under policies existing at the time of the loss or under previous policies in the same Companies.

" 'Provided if the Agent fails to place a reasonable value on any such insured property within the ninety days as aforesaid and which is agreed to by the insured and a loss occurs in that event the value as shown by the

policy or application shall be conclusively presumed to be reasonable and the settlement shall be made on that basis.

" 'SEC. 3. . . . That Chapter 447 of the Acts of 1909 entitled, "An Act to regulate contracts for fire insurance in this State, and to repeal Chapter 107 of the Acts of 1893 and Chapter 539 of the Acts of 1903" be, and the same is, hereby repealed, and the repeal thereof shall not operate to revive any act or acts therein repealed.

" 'SEC. 4. . . . That this Act take effect from and after its passage, the public welfare requiring it.'

▆▆▆ "It is obvious that the general purpose of the Act, as ascertainable from the caption, is the regulation of contracts of fire insurance so as to prevent overinsurance. Any provision, therefore, contained in the Act relating, directly or indirectly, to the subject matter expressed in the title, and having a natural connection thereto, must be held to be embraced therein. In my opinion, the provision of the Act with reference to the personal inspection of the building insured is germane to the subject of regulating fire insurance contracts to prevent overinsurance. The provision for such inspection is not another and different subject wholly unrelated to the purpose of the Act; on the contrary, it has a natural connection thereto. The recognized rule, adopted by our Supreme Court, is that so long as the subject matter of the body of the Act is germane to that expressed in the title, there is obedience to the mandate of the constitution. *Petty* v. *Phoenix Cotton Oil Co.*, 150 Tenn., 292; *Wilson* v. *State*, 143 Tenn., 55; *Crawford* v. *N. C. & St. L. Ry.*, 153 Tenn., 642. The intent of the constitutional provision as to the one subject of legislation was to prevent the union in the same act of incongruous matters and of objects having no connection or relation. *Railroad* v. *Byrne*,

119 Tenn., 287; *Bell* v. *Hart,* 143 Tenn., 587.

"It is further objected by learned counsel for defendants that while the inspection after the contract is written relates to buildings alone, yet the requirement that no contract shall be issued, etc., in excess of the fair value of the property applies to insurance upon all character of property, i. e., 'upon property or interests within the State.' In my opinion, the Act undertakes to deal alone with the subject of contracts of fire insurance on buildings. The expression 'upon property or interests' must be held to mean buildings whether owned in whole or in part by the insured. The Act has to do only with the insurance of buildings and the insurance of personal property is not within its terms.

"Again, it is objected that the body of the Act is broader than its caption, in that a provision is contained in section 2 thereof for the reimbursement of the insured of proportionate excess or premiums paid on the difference between the amount named in the policy and the actual value of the property insured; and includes not only premiums upon the contract of insurance in existence, but upon previous contracts of insurance which may have expired. It is insisted that as to the provision for reimbursement of excess premiums, the caption is silent; and that this requirement relates to a distinct subject than that mentioned in the caption. It is my opinion that the provision for reimbursement to the insured of excess premiums paid is germane to the subject of the Act and is directly related to the regulation of contracts for fire insurance to prevent overinsurance.

"My conclusion is that chapter 72 of the Public Acts of 1927 does not contain more than one subject and

that the body of the Act is not broader than its caption. My opinion is that said Act is constitutional and valid.

■ "It is next insisted by learned counsel for defendants that the Act does not make the policies in question valued policies. It is argued that the purpose and object of the Act was to repeal chapter 447 of the Acts of 1909, a valued policy law; that in repealing the valued policy law, the legislature evidenced an intent not to have a valued policy law in this State, and, therefore, the Act of 1927 should not be construed to be a valued policy law. It is true that the said Act of 1909 was a valued policy law and that it was repealed by the third section of the Act of 1927. However, in repealing the Act the legislature enacted another, and, to my mind, a fairer valued policy law. It cannot be maintained that the intention of the legislature was not to have a valued policy law, when in the same Act repealing the former valued policy law it enacted a new one. It will be noted that the Act of 1909, which counsel concedes to be a valued policy law, itself repealed chapter 107 of the Acts of 1893 and the amendatory Act, chapter 539 of the Acts of 1903, valued policy laws. The legislature of 1927 intended and did enact a valued policy law. The then existing valued policy law must have been considered not in line with current legislation on the subject. Important changes were made. The Act of 1909 excluded from its terms a policy containing a co-insurance clause and authorized the issuance of a policy containing a three-quarters clause. These provisions were eliminated in the new Act and other important changes made from the old Act.

"Unless the Act of 1927 be, in effect, a valued policy law, then it amounts to absolutely nothing and valuable time has been wasted in its passage. To give effect to

nothing contained in the Act but the first clause of section 2, 'that if buildings within the State insured against loss by fire are totally destroyed by fire, the Company shall not be liable beyond the actual value of the insured property at the time of the loss or damage,' would be but a legislative declaration of the provision of like tenor, contained in standard policies of fire insurance and nothing whatever would be accomplished by the Act. To take out of an act one clause and give it effect, to the exclusion of all the balance of the language of the act is not, of course, allowable under any rule of construction. The act must be construed as a whole and effect given to each and every provision thereof. Applying this rule of construction to the Act of 1927, it is apparent that the clause just quoted above has reference in the words 'actual value' to the 'fair value' ascertained by the personal inspection of the building by the agent, provided for in section 1. In other words, the agent having inspected the property and informed himself of its 'fair value,' and adjudged the amount of insurance accordingly, the company, in the event of total loss, is not liable beyond that value. But if the agent does not make such inspection and allows the amount of insurance to stand as written in the policy, then, in the event of a total loss, the amount so named shall be conclusively presumed reasonable and settlement made on that basis. The Act forbids the company from issuing insurance upon property of an amount which, with any existing insurance thereon, exceeds the fair value of the property. If any insurance company defies this prohibition and issues insurance for an amount in excess of the fair value of the property to its profit in excess premiums, why should it be heard to complain when required to pay the amount of insurance named in

the policies? The legislature has said to fire insurance companies, in effect, you shall not insure property beyond its fair value; you shall be allowed ninety days within which to inspect the buildings, to ascertain their fair value; and if you do this, you shall not be liable beyond that fair value. But if you ignore this law, then you stand liable for the amount of insurance that you did issue; and you cannot be allowed to escape liability for such amount on the ground that you defied the law and over-insured the property.

"But, argues the able counsel for defendants, the proviso contained in section 2 of the Act makes the company, in the event it fails to place a reasonable value on the property, liable only for the 'value' of the property 'as shown by the policy or application.' It is insisted that the Act should be interpreted to mean that the company is only required to pay the value of the insured property at the time of the loss, unless the parties, by agreement, have fixed a value, the same to appear in either the policy or application. I cannot agree to this interpretation. The language of the proviso itself negatives any such interpretation. It is there provided that 'if the Agent fails to place a reasonable value on any such insured property within the ninety days as aforesaid and which is agreed to by the insured and a loss occurs in that event the value as shown by the policy or application shall be conclusively presumed to be reasonable,' etc. Thus the obligation to pay the value as shown by the policy or application has reference alone to cases where the agent has failed to value the property and has failed to have any valuation agreed to by the insured. The Act should be interpreted, in my opinion, to mean that where no value has been fixed and agreed on, the company is liable for the amount

named in the policy. The word 'value,' as used in measuring the company's liability, means the amount of insurance it has issued. Where no value has been placed on the property by the agent, in accordance with the requirement of the Act, there would be no 'value' to look to in fixing liability except the amount of insurance written. The failure of the company to reduce the insurance in amount shows the company is satisfied that the amount of insurance issued represents the fair value of the property.

"It is conceded that none of the defendants, or other agents, within ninety days of the issuance of the respective policies of fire insurance, or at any other time prior to the date of the fire, caused the buildings covered to be personally inspected; nor did they at any time notify complainants that the total amount of insurance exceeded the fair value of the property. The policies sued on were issued in the fall of 1930, and the buildings were totally destroyed on June 8, 1931. For three months after issuance of the policies it was within the power and right of defendants to place a fair value on the property, and if complainants did not agree thereto, to cancel the policies. Indeed, it was within the contract right of defendants to cancel the policies at any time. Now, after ignoring the act and after failure to give complainants any notice that they did not consider the amount of insurance to be fair, they appear and seek advantage from their own failure to comply with the statutory requirements. The Act contemplates that any question of the value of the property be made prior to loss. While the buildings are standing their value can be fixed with certainty, while an estimate of the value, after total loss, cannot be fixed with any degree of certainty.

 ''Our statute is to be read into every contract of fire insurance and is a part thereof (*Thompson* v. *Fire Ins. Co.*, 142 Tenn., 408), and must be held to apply to the contracts issued by defendants to complainants.

''Let decrees be entered in favor of complainants for the full amount of the face of the policies, and let defendants pay the costs of the causes.''

In addition to the foregoing, it is proper to state that these buildings cost complainants considerably more than the sum for which they were insured; and it is conceded that to replace them under the present Building Code of Memphis would involve an expenditure of $10,000 in excess of the insurance recovered herein.