Lewis *v.* Western Assurance Company.

(*Nashville*, December Term, 1938.)

Opinion filed July 1, 1939.

W. C. RODGERS, of Memphis, for appellant.

BARTELS & BARTELS, of Memphis, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

This is a suit on a policy of fire insurance. The chancellor dismissed the bill for failure of complainant to comply with the demand of defendant for an appraisement as to the value of the property destroyed.

The essential facts, as stipulated, are as follows: On July 31, 1937, the local agent of defendant issued a policy of fire insurance to complainant on a dwelling in Memphis insuring same for $1,000 for one year. On June 21, 1938, the local agent of defendant wrote complainant as follows:

"We enclose herewith Western Assurance Policy No. 10189 in the amount of $1000.00, covering your dwelling at the S/E Corner of Peebles & Sax, effective for one year from July 31st, 1938 and renewing the insurance which expires on that date."

Complainant paid the premiums on both policies. The dwelling was totally destroyed by fire on September 13, 1938. Complainant gave notice of the loss to the defendant and filed proof of loss within the prescribed time. Complainant insisted that his loss equaled or exceeded

$1,000, but that whether it did or not defendant was liable for that sum since it failed to inspect the property, as provided by Chapter 72, Pub. Acts 1927.

It is stipulated that the property was never inspected by any agent of defendant. The defendant, deeming the loss to be less than $1,000, demanded an appraisal under the terms of the policy, which was rejected by the complainant upon the ground that there was nothing to appraise. Thereupon the bill herein was filed on November 22, 1938. The defendant filed its answer, insisting that the suit was premature and could not be maintained for failure of complainant to comply with the appraisement provision of the policy. The stipulation of facts was filed February 8, 1938, and a final decree dismissing the bill was entered March 14, 1939.

The pertinent provisions of Chapter 72, Pub. Acts 1927, as carried into the Code, are as follows:

6172. ''Every agent, within ninety days after making or writing any contract of fire insurance on any building or structure in this state, shall cause the same to be personally inspected; and no company, and no officer or agent thereof, and no insurance broker, shall knowingly issue, negotiate, continue or renew or cause to permit to be issued, negotiated, continued or renewed any fire insurance policy upon property or interests therein within the state of an amount which, with any existing insurance thereon, exceeds the fair value of the property.''

6173. ''If buildings within the state insured against loss by fire are totally destroyed by fire, the company shall not be liable beyond the actual value of the insured property at the time of the loss or damage; and if it shall appear that the insured has paid premiums on an amount in excess of said actual value, he shall be reimbursed the

proportionate excess of premiums paid on the difference between the amount named in the policy and said actual value, with interest at six per cent. per annum from the date of issue; and said excess or premiums, and interest thereon, shall be allowed the insured from the time any companies carrying said insurance at the time of the loss have continuously carried the insurance on the destroyed buildings, whether under policies existing at the time of the loss or under previous policies in the same companies.''

6174. ''However, if the agent fails to place a reasonable value on any such insured property within the ninety days, as aforesaid, and which is agreed to by the insured, and a loss occurs, in that event the value as shown by the policy or application shall be conclusively presumed to be reasonable, and settlement shall be made on that basis.''

 Since the property was never inspected under the first policy it became a valued policy ninety days after its delivery. The fire, however, did not occur during the period covered by that policy, but about forty-five days after the renewal policy became effective. The controversy turns upon whether the renewal policy was a new and independent contract or whether it was an extension or continuation of the original contract. And that depends, primarily, upon the intention of the parties as ascertained from the instrument itself. Both policies contain the following provision:

''This policy may by a renewal be continued under the original stipulations, in consideration of premium for the renewed term, provided that any increase of hazard must be made known to this company at the time of renewal or this policy shall be void.''

It is not claimed that there was any increase of hazard.

■ With respect to the Act of 1927, this Court, in construing same in *Riddick* v. *Insurance Co.*, 165 Tenn., 105, 115, 52 S. W. (2d), 166, 169, said:

"Our statute is to be read into every contract of fire insurance and is a part thereof, *Thompson* v. *Fire Ins. Co.*, 142 Tenn., 408, 215 S. W., 932, and must be held to apply to the contracts issued by defendants to complainants."

In the cause under consideration the Act of 1927, became a part of the contract of July 31, 1937. Defendant, having failed to inspect within the ninety-day period, became liable for the face value of the policy. The renewal a year later, under the express terms of the original policy, had the effect of extending the original contract for another year. The situation was the same as though the policy had been issued originally for two years, in which event defendant, so far as value was concerned, had ninety days from the date of issuance to inspect.

In 27 C. J., page 111, it is said:

"The renewal receipt is more than a mere receipt for money; it is evidence of a contract. But it is an extension of the original policy, and not a substitute therefor."

In 14 R. C. L., pages 889-890, it is said:

"A renewal of insurance by the payment of a new premium and the issuance of a receipt therefor, there being no provision in the policy for its renewal, is a new contract on the same terms as the old, but where the renewal is in pursuance of a provision to that effect it is not a new contract but an extension of the old."

■ This principle was recognized by this court in *Silliman* v. *Ins. Co.*, 131 Tenn., 303, 174 S. W., 1131, 1132, L. R. A., 1915F, 707, in which under the terms of a life

policy the insured converted it to a different form of policy, after paying premiums for four years. The new policy contained a clause that the company should only be liable for premiums paid in case insured committed suicide within a year, which he did. In affirming the decree of the chancellor holding the company liable it was said: "It seems to us quite clear that under the facts stated the new policy was but a continuation of the same insurance contract. It was based on the old application and the old medical examination, and the new terms were in strict accord with the provisions of the first policy, granting to the insured the right to make just such a selection to take the place of the original form."

In the present cause the defendant issued its policy to complainant for one year, agreeing to pay face value thereof if property is totally destroyed, unless it inspects same and requests a modification as to value within ninety days; and further agrees that upon paying premium the contract may be extended for another year, but with the understanding that the insured is to notify it of any increase of hazard. At the expiration of ninety days, without any inspection or request for change as to value, the instrument became a valued policy, and the company, during the existence of the contract, cannot question the value, unless it is shown that there has been an increase in hazard unknown to it.

This cause represents a question of first impression which the defendant has raised in good faith. That being true, we do not consider this a proper cause in which to tax defendant with the statutory penalty. Code 1932, section 6434.

For the reasons stated herein the decree of the chancellor will be reversed and a decree will be entered in

favor of complainant and against the defendant for $1,000, together with interest from November 22, 1938, and for all costs of the cause.