**William Howard LASATER et al.,
Complainants-Appellants,**

v.

**EQUITABLE FIRE AND MARINE INSURANCE COMPANY, Defendant-Appellee.**

Court of Appeals of Tennessee,
Middle Section.

March 26, 1971.

Certiorari Denied by Supreme Court
April 3, 1972.

J. Vaulx Crockett, Nashville, for complainants-appellants.

Richard D. Taylor and John P. Branham, Nashville, for defendant-appellee.

## OPINION

SHRIVER, Judge.

### THE CASE

This is an appeal from a decree of the Chancellor sustaining a motion to dismiss the original bill, made at the conclusion of complainants' proof. The bill was filed to recover under a homeowner's policy of insurance which was issued to Katie M. Lasater, covering the home in which she lived and the contents thereof, her home having been totally destroyed by fire on January 30, 1968.

Defendant denied liability on the ground that the property covered by the policy in question was another house formerly owned by Katie M. Lasater and which was not destroyed by fire.

From the decree dismissing complainants' bill, an appeal to this Court was duly perfected and assignments of error filed.

### THE FACTS

The Original Bill avers, and the record shows, that Katie M. Lasater died in Davidson County, Tennessee, on January 6, 1968 and the complainants, who are her children, took by Will all of her real and personal property.

It is further averred that, on October 11, 1966, Katie M. Lasater purchased from Frank Jenkins and wife a tract of land in Davidson County, described as "being situated on Cane Ridge Road on the easterly boundary of the McMorrough property". A copy of the deed of conveyance is made Exhibit I to the bill. Approximately two months later, Katie M. Lasater conveyed a part of this tract to J. O. Cramer and wife by deed, a copy of which is made Exhibit II to the bill.

Situated on the aforesaid tract were two houses, one being of brick veneer construction and the other of frame construction. The brick veneer house was the one sold to J. O. Cramer and wife, while Katie M. Lasater resided in the frame residence from the time she purchased same until her death.

The two residences were insured by the owners and the insurance was transferred to Katie M. Lasater when she purchased said property. The insurance expired on January 7, 1966 and a new three year "Home Owners Policy" No. 47 47 23 was issued, effective on that date, to Katie M. Lasater by the defendant, Equitable Fire and Marine Insurance Company, a copy of said policy being attached to the bill as Exhibit III.

According to the face of this policy, it insures the dwelling of Katie M. Lasater located on "Antioch Pike (formerly Cane Ridge Road) on Eastern Boundary of McMorrough Property, of record in Book 1191, Page 25, R.O.D.C., Antioch, Tennessee." The dwelling is further described as follows:

"The described dwelling of Frame (1 family) construction is occupied by not more than two families and not more than two roomers or boarders per family."

The coverage provided for said dwelling was $17,500.00; for appurtenant private structures $1,750.00; for unscheduled personal property $7,000.00; and for additional living expense $1,750.00.

Section II of the policy provides coverage for personal liability (bodily injury and property damage) $25,000.00; personal medical payments $500.00; and physical damage to property of others $250.00.

On January 30, 1968, a few weeks after the death of Katie M. Lasater, the frame house in which she had lived until the time of her death, and its contents, were destroyed by fire. A claim was duly filed with the defendant Insurance Company which denied coverage of the house that was destroyed, insisting that the policy which was in force covered the brick veneer house that had formerly belonged to Katie M. Lasater and did not cover the frame house in which she lived until her death.

The Answer of defendant admits that when Katie M. Lasater purchased the property in question, the two residences were insured and the policies transferred to her.

It is averred, and the record shows, that the frame dwelling, which was subsequently destroyed by fire, was insured for $3,000.00 under the policy which was transferred to the purchaser, and when this policy expired on June 17, 1965, the coverage was renewed by the defendant Insurance Company for one year and the policy mailed to the Fidelity Federal Savings and Loan Association which held a mortgage on the property. It is further shown that, at the time Katie M. Lasater acquired the property, the policy of insurance covering the brick veneer dwelling was transferred to the purchaser. It also had a mortgage clause payable to Fidelity Federal Savings and Loan Association and, when this policy expired on January 7, 1966, it was renewed for the above amount, in addition to $7,000.00 for personal property and $1,750.00 on appurtenant structures. It is shown that the premiums on this policy were paid through an escrow account at the Fidelity Federal Savings and Loan Association. It is significant that, when this policy was renewed, an additional premium endorsement was attached to it by the defendant Insurance Company, covering liability for a *one-family dwelling located on the east side of Cane Ridge Road at Railroad, Antioch, Tennessee,* (see Exhibit III to the Original Bill). It is further to be noted that this is the same description that was in the original policy covering the small frame house.

When Mrs. Katie M. Lasater sold the brick veneer house and paid off that por-

tion of the mortgage which covered it, Fidelity Federal Savings and Loan Association, by mistake, returned Policy G–99–25–71, which policy covered the small frame house, to the insurance agent who originally sold both policies. Thereafter, on January 7, 1966, the agent, relying on the actions and information received from Fidelity Federal Savings and Loan Association, renewed the policy covering the large house, although that house no longer belonged to Mrs. Lasater.

The defendant insists that Fidelity Federal Savings and Loan Association was acting as agent for Katie M. Lasater and that she is, therefore, bound by the mistake made by the Savings and Loan Association.

In this connection it should be noted that, in the course of the trial, when Mr. Marshall Griffith, Manager of the Customer Service Department of Fidelity Federal Savings and Loan Association, was questioned by counsel for complainants, it was stipulated by counsel for defendant that Fidelity Federal Savings and Loan Association did not act as insurance agent for Mrs. Lasater, but that it acted as her agent only in paying the premiums out of an escrow fund in its hands. Counsel for defendant specifically stated: "We'll stipulate that they did not act as insurance agent for this lady."

It is averred in the Answer that Exhibit III to the Original Bill is not a true copy of the original policy issued and that the true description in the policy is:

"The described dwelling of B–V (1 family) construction is occupied by not more than two families and not more than two roomers or boarders per family."

And it is averred that "B–V" is the commonly accepted abbreviation for "brick veneer".

It is stated in the Answer that the small house of frame construction, the walls of which had been covered with asbestos shingles, was destroyed by fire, and that the defendant was not notified that Katie M. Lasater had sold the large dwelling, and that the policy covering the brick veneer dwelling was kept in force through mistake of "her agent, Fidelity Federal Savings and Loan Association".

The Answer concludes as follows:

"The defendant avers that it afforded no coverage on the small frame house destroyed and avers that should the Court find to the contrary, nevertheless, no coverage beyond $3,000.00 on that dwelling was afforded since both Katie Lasater and the defendant agreed to coverage in that amount up until the mistake committed by Fidelity Federal Savings and Loan Association, all as aforesaid."

In his Memorandum the Chancellor states that, at the conclusion of complainants' proof, counsel for defendant moved to dismiss on the ground that there was no contract of insurance and no ground upon which a recovery could be had against the defendant, and that defendant elected to stand on the motion. After discussing some of the authorities cited by counsel, as hereinabove indicated, the Chancellor dismissed complainants' bill.

## ASSIGNMENTS OF ERROR

There are twelve assignments of error, as follows:

"I. The Chancellor having held that the parties did intend to insure Mrs. Lasater with respect to her home, erred in failing to hold that the policy could and did according to its terms insure Mrs. Lasater with respect to the home, which she occupied prior to her death and its contents.

II. The learned Chancellor erred in holding that the policy was executed by defendant by mistake.

III. The learned Chancellor erred in holding that Fidelity Federal Savings and Loan Association acted as agent of Mrs. Katie M. Lasater.

IV. The learned Chancellor erred in holding that the defendant and its agent were not negligent in issuing and continuing the policy, if defendant did make a mistake in issuing it.

V. The learned Chancellor erred in failing to hold that the defendant corrected any error it might have made in issuing the policy, when the agent issued the corrected certificate.

VI. The learned Chancellor erred in failing to hold that defendant could not retain the premiums collected on the policy and at the same time treat the policy as void because of its mistake.

VII. The learned Chancellor erred in failing to give effect to the valued policy law, T.C.A. Section 56–1137, et seq.

VIII. The learned Chancellor erred in failing to construe the evidence adduced by complainants most strongly in their favor and to treat the motion to dismiss as analogous to a motion for a directed verdict.

IX. The learned Chancellor erred in failing to enter a decree in favor of complainants for the loss of real estate and personal property by complainants and this Court should render judgment for complainants either under the valued property law as to the real estate, or at actual cash value if the valued property law is not applicable and for the value of the personal property.

X. The learned Chancellor erred in failing to hold that interest was allowable on such recovery as should have been rendered.

XI. The Chancellor erred in any event in refusing to allow recovery for the personal property contents destroyed by fire.

XII. The Chancellor erred in any event in dismissing the bill at complainants' cost and refusing to enter judgment at least for the premiums paid on the policy."

## OUR CONCLUSIONS

From the record herein, it is clearly apparent that it was the purpose and intention of both the property owner and the defendant to provide fire insurance on the dwelling owned and occupied by Mrs. Lasater during her lifetime and which was, in fact, the small frame house on her property and not the larger brick veneer house which was sold shortly after she purchased it.

It is further significant that the policy description of the insured premises which was carried as a declaration by Mrs. Lasater is as follows:

"The described premises covered hereunder are located at the above address, unless otherwise stated herein: (No., Street, Town, County, State) Antioch Pike (formerly Cane Ridge Road) on *Eastern Boundary of McMorrough Property* of record in Book 1191, Page 25, R.O.D.C., Antioch, Tennessee."

It is also to be noted that the description in the deed to Mrs. Lasater is as follows:

"Beginning at a point in the center of Antioch Pike, formerly Cain Ridge Road, on the *eastern boundary of the McMorrough property*; thence with the center of said property S47° 17′ E 399.8 feet and continuing with the center of said Road S51° 55′ E 100 feet to a point, *the westerly boundary of the Collins property*; thence N 7° 21′ E 440 feet along a fence to a point; thence N59° 04′ W and along the southerly boundary of the Choate property, 552 feet to a point; thence S7° 21′ W and along the easterly boundary of the McMorrough property, 312 feet to the point of beginning."

The description in the deed to the brick veneer house which Mrs. Lasater acquired and then sold, is in part as follows:

"Beginning at a point in the center of Antioch Pike, formerly Cane Ridge Road, said point beging the common front corner of the property herein described and the *Collins* property shown on said survey; *thence along the westerly boundary line of Collins*, N. 7 deg. 21 min. E. 440 feet to a point; . . ."

In the policy, we find the following description:

"*Section II Only*: (a) The described premises are the only premises where the Named Insured or spouse maintains a residence other than business property and farms; . . . (Exhibit IX, emphasis by defendant)."

It is seen from the proof that the mistake which precipitated this whole matter occurred when, on January 4, 1966, Mrs. Judy Weaver in the Insurance Department of the Fidelity Federal Savings and Loan Association, returned Insurance Policy No. G–99–25–71 in the amount of $3,000.00 to the insurance agent who had originally written the policy, stating that the loan at Fidelity Federal on said property had been paid in full and that the insured should be contacted about the continuation of the policy. It was the custom and practice of the Savings and Loan Association to return insurance policies held by them as mortgagee when the mortgage was paid off. In this instance, admittedly, Mrs. Weaver returned the wrong policy and kept in the files of the Association the $17,500.00 policy on the brick veneer home which Mrs. Lasater had sold and in which she no longer had an interest. It appears without question that the officers of Fidelity Federal had actual knowledge of the sale of the brick veneer house, but returned the wrong policy, by mistake, and then the insurance agent cancelled Policy No. G–99–25–71 and returned to Mrs. Lasater the premiums that had been paid on said policy. However, the policy which was retained and on which Mrs. Lasater continued to pay premiums was not only for a larger amount, but carried a considerably larger premium and this policy was kept in force until after the fire occurred. However, it should be noted that the premium rate was the same on frame construction as it was on brick veneer.

Another fact which should be noted is that the policies of insurance on the two houses were in the custody and physical possession of the Savings and Loan Association and not in the possession of Mrs. Lasater and when the policy on the frame house was returned by mistake, it was sent to the insurance agent of defendant. Thus, Mrs. Lasater, so it appears, was not aware that the policy which was continued in force was the one covering the brick veneer house and not the frame house which she continued to own and occupy as her home.

When the policy on which suit was brought was issued January 7, 1966, the face amount, which was $16,000.00 in the old policy, was increased to $17,500.00, and it is not insisted that this increase in coverage was made after consultation with Mrs. Lasater, as directed by Fidelity Federal, or that there was any inspection of complainants' property by defendant's agents.

Sections 56–1137—56–1139, T.C.A. are to be read into every contract of fire insurance and become a part thereof. Riddick v. Yorkshire Ins. Co., 165 Tenn. 105, 52 S.W.2d 166; Lewis v. Western Assur. Co., 175 Tenn. 37, 130 S.W.2d 982.

Referring to these Code Sections, the Supreme Court, in Riddick v. Yorkshire Ins. Co., supra, stated that this act is a *valued policy law*.

56–1137, T.C.A., provides as follows:

"*Inspection of property insured against fire.*—Every agent, within ninety (90) days after making or writing any

contract of fire insurance on any building or structure in this state, shall cause the same to be personally inspected; and no company, and no officer or agent thereof, and no insurance broker, shall knowingly issue, negotiate, continue or renew or cause to permit to be issued, negotiated, continued or renewed any fire insurance policy upon property or interests therein within the state of an amount which, with any existing insurance thereon, exceeds the fair value of the property."

56–1138, T.C.A., provides that where property is insured against loss by fire and is totally destroyed, the Company shall not be liable beyond the actual value of the insured property at the time of loss, and if the insured has paid premiums on an amount in excess of actual value, he shall be reimbursed the proportionate excess or premiums paid on the difference between the amount named in the policy and the actual value, with interest at six per cent per annum from the date of issue.

56–1139, T.C.A., is as follows:

*"Measure of damages in case of agent's failure to inspect property.*—If the agent fails to place a reasonable value on any such insured property within the ninety (90) days, as provided in § 56–1137, and which is agreed to by the insured, and a loss occurs, in that event the value as shown by the policy or application shall be conclusively presumed to be reasonable, and settlement shall be made on that basis."

In Newark Fire Ins. Co. v. Martineau, 26 Tenn.App. 261, 170 S.W.2d 927, it was pointed out that the foregoing statute has no application to an open fire insurance policy and, where the policy sued on is an open one, the value of the property at the time of the loss must be determined.

It has also been held that the "valued policy law" applies only to insurance on buildings or structures on land and not to insurance on personal property alone.

Clift v. Fulton Fire Ins. Co., 44 Tenn.App. 483, 315 S.W.2d 9.

Section II of the policy which was transferred to Mrs. Lasater specifically stipulates that she resides in the property and if, as required by regulations and by statute, there had been an inspection of the property sought to be insured, it seems that the insurer could not have failed to ascertain that the $17,500.00 policy which it issued for the purpose of insuring Mrs. Lasater's place of residence was, in fact, the wrong policy.

This proposition is fortified by the fact that defendant was furnished the book and page number of Mrs. Lasater's deed and used a description which identifies the small house rather than the brick veneer house. This is apparent when the description hereinabove set forth is compared, since the frame house is located on the eastern portion of the property while the brick veneer house is on the western portion.

However, since defendant's motion to dismiss, made at the conclusion of complainants' proof, was sustained, no proof was offered by the defendant on the question whether there was or was not an inspection of the property, either before or after the policy in question was issued. The facts and circumstances shown by the record would seem to indicate, as hereinabove stated, that there was no inspection by the defendant.

Under all of the circumstances shown by this record the Court is inclined to the view that the policy for the face amount of $17,500.00 on the building should not be held to be a valued policy, thus fixing the amount of recovery for the loss of the building at that amount. It seems to this Court, on the other hand, that it would be inequitable and a miscarriage of justice for the defendant Insurance Company to escape all liability for the loss by fire of the frame dwelling and its contents. Certainly, the policy was intend-

ed to cover the loss of the dwelling in which Mrs. Lasater lived and, in any event, covered the loss of the household goods and contents of her place of residence.

In Laster v. American National Ins. Co., 170 Tenn. 689, 693, 98 S.W.2d 1068, 1069, in dealing with the construction of an insurance policy, the Court said:

"The question therefore narrows to a construction of the contract, as heretofore indicated, made up of the recital quoted from the application and the Automatic Premium Loan provision quoted from the policy.

. . . . . .

In this situation the rule of construction generally recognized and repeatedly applied by this court comes into play, that whenever contracts of insurance are so framed as to be 'susceptible of two interpretations differing in import, that interpretation which will sustain the claim of the policy holder and cover the loss should be adopted.' Laue v. Grand Fraternity, 132 Tenn., 235–247, 177 S.W. 941, 944, L.R.A. 1915F, 1056, Ann.Cas., 1917A, 376; Pacific [Mutual] Life Ins. Co. v. Galbraith, 115 Tenn., 471, 483, 91 S.W. 204, 112 Am.St.Rep., 862. The above quotation was expressly approved in the recent case of Stovall v. New York Indemnity Co., 157 Tenn. 301, at page 314, 8 S.W. (2d) 473, 72 A.L.R., 1368, and it is merely one statement of the rule which has been approved in many other of our decisions."

We think the equities of the situation in the case at bar would be met by holding that the defendant Company is liable to complainants for the value of the house which was destroyed by fire, not to exceed $3,000.00, which was the amount of the policy that Mrs. Lasater had apparently intended to carry on the building and which she thought was in force, plus the value of the contents, not to exceed $7,000.00, which was the face amount of the coverage of said contents.

Without discussing the numerous assignments of error in detail, we simply sustain such assignments as apply to the foregoing determination of this controversy.

Since the evidence in the record before us is not sufficiently definite for us to fix the amount of the loss as to the building or its contents, the cause is remanded to the Chancery Court for that purpose and for the rendition of judgment accordingly. The costs of this appeal are to be taxed to the defendant below, appellee here, and the costs below will abide the decision of the Chancellor.

Reversed and remanded.

PURYEAR and TODD, JJ., concur.