Raymond PRICE and wife, Ivolene Price,
Plaintiffs-Appellees,

v.

ALLSTATE INSURANCE COMPANY,
Defendant-Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Feb. 4, 1981.

Permission to Appeal Denied by Supreme
Court April 13, 1981.

David L. Franklin, Anderson, Cleary & Cooper, Chattanooga, for defendant-appellant.

Sidney R. Seals, Sexton, Sexton & Beaty, Oneida, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

This is a suit to recover for a fire loss of a house under a policy of insurance issued by defendant.

At the conclusion of the evidence, the trial judge directed the verdict on behalf of the plaintiffs for $25,000.00. The trial judge, in directing the verdict, commented:

> What I'm saying is that the only credible proof in my opinion that is before this jury is that she [plaintiff] says it's worth $25,000. It was your [defendant's] option as to whether to introduce proof as to what it was worth.
>
> I don't think there is any latitude for the jury to have. If they were to come back in here with less than $25,000, in my opinion, it would be error, speculation.
>
> For whatever it's worth, in my opinion, there was a new policy and it was not valued. The 90 days hadn't run. I would say they wouldn't have been bound by the face value of the new policy. What I am saying is that the only record as to the value of the home is the $25,000.

On appeal, the insurance company insists that the evidence before the trial court required the trial judge to submit the issue as to the value of the house to the triers of fact. Plaintiffs, in their brief, raise the issue of whether the policy was a valued policy under Tennessee statutes.

The insured house was constructed by plaintiff Ivolene Price's brother and purchased by plaintiffs in 1976 for a considera-

tion of $500.00 cash and a 1972 motor vehicle worth between $1,000.00 and $1,500.00. After the purchase, plaintiffs completely remodeled the house at a cost of approximately $15,000.00. Plaintiffs then occupied the property and, in February, 1977, purchased a homeowner's policy on the house from defendant in the amount of $25,000.00 coverage for loss by fire and other risks. The property was condemned by the State of Tennessee under Eminent Domain proceedings and plaintiffs settled with the state for the land with the agreement they would be allowed to keep the house. The plaintiffs intended to move the house from its location approximately 100 feet and maintain the house as rental property. In June, 1977, the plaintiffs moved to another home and notified an agent for defendant that they wanted to continue the fire insurance on the house but were advised that a new policy was required since the homeowner status did not apply to rental properties. A new policy was issued, effective June 10, 1978, being a so-called broad form fire policy. Before the house was moved, it was totally destroyed by fire on September 3, 1977.

This suit was subsequently filed to recover under the terms of the policy against the defendant. At trial, plaintiff—wife testified to the purchase of the property and the monies expended in remodeling. She testified the fair, market cash value immediately prior to the fire was, in her opinion, $25,000.00 and immediately after the fire no value as the house was completely destroyed. On cross-examination, she was asked:

Q. All right, and, were you asked on your discovery deposition that I mentioned earlier where you were under oath to tell the truth, were you asked the same question and responded that you didn't know what it was worth?

A. Who really knows. My best estimate is $25,000.

The question and answer from her deposition in evidence are:

Q. Okay, my question was, do you have an opinion as to what the value of the

house was before this fire? And this answer, "In my opinion, it was a high value."

Question: But, you don't know what, what figure?

Answer: Like I said, I can't really—I really, honestly can't put a money value price on it because interfering with my mother's lifestyle that I did not want to have her moved away from home.

Defendant offered no evidence on the value of the house but insists it was improper to direct a verdict on the issue of damages, since reasonable minds could draw different conclusions as to the value of the house from plaintiff's testimony. We agree.

The early case of *Wray v. Railroad*, 113 Tenn. 544, 82 S.W. 471 (1904), states a lay opinion as to value is synonymous with an estimate of value and an estimate of value as to damages may be made by one familiar with the facts who states the facts upon which he bases his estimate. *Id.*, at 556, 82 S.W. 471.

The recent case of *State ex rel. Smith v. Livingston Limestone*, 547 S.W.2d 942 (Tenn.1977), reaffirms the principle that a lay witness may give his opinion of fair, cash market value of real estate after stating facts upon which his opinion is based. This opinion observed:

> The opinion of the real estate expert is accepted because of his superior training, skill and experience, that of the layman because of his special, peculiar knowledge of the particular land, its surroundings and value. In the case of each, it is considered that the opinion is reasonably trustworthy and *helpful to the trier of fact in determining the market value of the land in question.* 31 Am.Jur.2d 677, 547 S.W.2d 943. [Emphasis supplied.]

■ Neither the court nor jury is bound to accept opinion testimony as a matter of law as the market value of real estate and the issue of value is for the trier of fact. *Poole v. First Nat. Bank of Smyrna*, 29 Tenn.App. 327, 196 S.W.2d 563 (1946). Interest alone is enough to make a witness's credibility a question for the jury and a verdict may not be directed upon the testimony of an interested witness even though he is not contradicted, impeached or discredited. *Id.*, at 339, 196 S.W.2d 563. Although the owner's testimony was the only opinion of value offered in evidence, it did not establish conclusively the value of the house as a matter of law and the trial judge improperly directed a verdict in favor of the plaintiff on this issue.

The appellee, however, insists damages are established as a matter of law under the provisions of *T.C.A.*, § 56–7–801, *et seq.*, and there is no issue of fact for submission to the jury as to damages.

The issue thus becomes whether the policy of fire insurance is a valued policy within the meaning of the valued policy statute.

■ If the policy is a valued policy, the valuation fixed in the policy is conclusive since the claim is for a total loss. *Third Nat. Bank v. Am. Eq. Ins. Co. of N. Y.*, 27 Tenn.App. 249, 178 S.W.2d 915 (1943); *Couch on Insurance 2d*, Anderson, § 54:104, *Valued Policies or Statutes*, at 381.

Defendant issued the homeowner's policy on the property in February, 1977; neither that policy nor the application are in the record. No inspection was made of the premises, in accordance with *T.C.A.*, § 56–7–801, and that policy, as the defendant concedes, became a valued policy after 90 days from the inception date. On June 10, 1977, Mrs. Price called an agent for defendant and asked to insure their other house. She advised the agent of the existing policy and he advised her that since she was moving from the house, the company needed to change the policy and convert it to a fire policy. She agreed, but no new application was taken for the issuance of the broad form fire policy which is in the record. A customer service request form was partially completed by the agent and forwarded to the defendant. He filled in these special instructions: "Please convert to fire and EC with Broad Form—Insured has moved out—Renting it to 1 family. I have extended liab. of now HO–HL 397 7745." This

customer service request includes no information as to value nor is information as to the type of construction, roof and other data supplied. The only other notation on the form by the agent is: "Subject to the conditions on the reverse side, the Company hereby binds the requested change in the policy effective: (Hour) 11:00 a. m., (Month) 6, (Day) 10 1977", and is signed by the agent with office location. The policy was subsequently issued effective June 10, 1977, for one year, insuring the house for $25,000.00. The agent explained the difference between defendant's homeowner's policy and a fire policy:

A homeowner's policy has a broader coverage. Under the Price's homeowner's policy on this property before we changed it, it was our deluxe policy which is an all-risk policy, which would give you a lot broader coverage as far as claims and things of that nature.

Under a fire policy, you are only covered for certain things that are listed in the policy and nothing else. The homeowner's is really the opposite. It covers everything except what we exclude.

On cross-examination, the agent responded:

Q. Then, in effect, it is just like—what happened was you excluded all the other coverage and left the fire protection?

A. Well, like I say, we can't do that. I don't have any authority to do that. The company doesn't have any forms.

Q. I understand that. It may not be company policy but, in effect, that's what happened, isn't that correct?

A. Yes.

Q. Your answer is yes?

A. Yes.

85 days after the issuance date of the fire policy, the property was totally destroyed by fire. No inspection had been made pursuant to *T.C.A.*, § 56–7–801, nor was any effort made to question the value within 90 days from June 10, 1977. The policy was cancelled by defendant approximately one month following the fire.

■ Defendant insists the fire policy did not become a valued policy until the expiration of the 90–day period. If this insistence is correct, defendant's failure to comply with the inspection provision is of no consequence since the loss occurred within 90 days of the issuance of the policy. Where the agent has not inspected the property and the fire occurs prior to the expiration of the 90–day period and the property is destroyed, the policy is open and not valued. *Newark Fire Ins. Co. v. Martineau*, 26 Tenn. App. 261, 170 S.W.2d 927 (1943). On the rationale that the statute gives the insurer 90 days within which to inspect and evaluate the property and if the loss occurs within the 90–day period, the insurer is denied the right to inspect and evaluate the property.

Plaintiffs rely upon *Lewis v. Western Assurance Company*, 175 Tenn. 37, 130 S.W.2d 982 (1939). In that case, the court determined the renewal policy was a continuation of the original contract, which was determined from the intention of the parties as ascertained from the policy. The *Lewis* court placed great emphasis upon a provision in the original contract permitting renewal under the same conditions and concluded the renewal contract was merely an extension of the old contract and was, therefore, a valued policy since the property was not inspected in accordance with the statute under the first policy.

■ Defendant insists, since the statute provides that an agent shall cause a building to be inspected "within 90 days after making or writing any contract of fire insurance . . .",[1] the policy issued June 10,

1. *T.C.A.*, § 56–7–801. *Inspection of property insured against fire—No insurance exceeding fair value of property.*—Every agent, within ninety (90) days after making or writing any contract of fire insurance on any building or structure in this state, shall cause the same to be personally inspected; and no company, and no officer or agent thereof, and no insurance broker, shall knowingly issue, negotiate, continue or renew or cause to permit to be issued, negotiated, continued or renewed any fire insurance policy upon property or interests therein within the state of an amount which, with any existing insurance thereon, exceeds the fair value of the property.

1977, falls within the provision of "any contract of fire insurance." We do not believe defendant is entitled to the construction of the statute urged upon us. The valued policy statute was enacted primarily to protect insureds from being subjected to the insurer's argument that the building had been over insured and gives the insurer an incentive to inspect risks and assist insureds in establishing proper insurance evaluations. The statute is a remedial statute. *Magrath v. Mechanics & Traders Ins. Co.*, 249 F.2d 98 (10th Cir. 1957). Remedial statutes are liberally construed in the furtherance of their purpose. *Dailey v. State*, 225 Tenn. 472, 470 S.W.2d 608 (1971). *T.C.A.*, § 56–7–801, provides in pertinent part: "Every agent within ninety (90) days after making or writing any contract of fire insurance on any building or structure in this state, shall cause the same to be personally inspected; and no company, and no officer or agent thereof, and no insurance broker, shall knowingly . . . continue or renew . . . any fire insurance policy upon property . . . within the state of an amount which, with any existing insurance thereon, exceeds the fair value of the property."

 The issuance of the policy on June 10, 1977, was, in effect, a continuation or renewal of the fire insurance already in force. At the time of the issuance of the second policy, no application was taken from the insured; no information about the dwelling was obtained and the insurance company obviously relied on the original application for information required for issuance of the policy. The latter policy provided identical fire coverage to the original policy and it may be inferred from the agent's testimony that the issuance of the second policy was for the convenience of defendant due to its structured forms and policies. We, therefore, conclude that the policy was a valued policy and the value shown on the policy of $25,000.00 is conclusively presumed to be reasonable. *T.C.A.*, § 56–7–803; *Riddick v. Yorkshire Ins. Co.*, 165 Tenn. 105, 52 S.W.2d 166 (1932). Nor does the fact that the building had been constructively severed from the real estate remove the policy from the valued policy law. *Magrath, supra; Farm Mutual Insurance Co. of Arkansas, Inc. v. Barnes*, C.C.H., *Fire and Casualty*, 9–347 (1957).

We conclude that plaintiffs were entitled to a judgment for $25,000.00 as a matter of law and the judgment is affirmed for reasons expressed herein. The cause is remanded to the trial court and the costs incident to appeal are assessed against the defendant.

PARROTT, P. J., and GODDARD, J., concur.