**IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
AT JACKSON**

_____

|                          |   |                             |
|--------------------------|---|-----------------------------|
|                          | ) |                             |
| **ELMER LEWIS SIDES**,   | ) | Shelby County Circuit Court |
|                          | ) | No. 148278 R.D.             |
|   Plaintiff/Appellee. | ) |                      |
|                          | ) |                             |
| VS.                      | ) | C.A. No. 02A01-9611-CV-00277 |
|                          | ) |                             |
| **PEGGY LUE SIDES**,     | ) |                             |
|                          | ) |                             |
|   Defendant/Appellant. | ) |                     |
|                          | ) |                             |

FILED

**October 14, 1997**

**Cecil Crowson, Jr.**
Appellate Court Clerk

_____

From the Circuit Court of Shelby County at Memphis.
**Honorable Robert A. Lanier, Judge**

**Darrell D. Blanton**, CAUSEY, CAYWOOD, TAYLOR, McMANUS & BAILEY,
Memphis, Tennessee
Attorney for Defendant/Appellant.

**Kay Farese Turner**, Memphis, Tennessee
Attorney for Plaintiff/Appellee.

OPINION FILED:

**AFFIRMED AND REMANDED**

**FARMER, J.**

**CRAWFORD, P.J., W.S.**: (Concurs)
**SUMMERS, Sp. J.**: (Concurs)

Defendant Peggy Lue Sides (Wife) appeals the final decree of divorce entered by the trial court which distributed the parties' marital property and awarded the Wife alimony and attorney's fees. We affirm.

The parties had been married for over twenty-five years when they separated in February 1995. No children were born of the marriage. At the time of the divorce trial in July 1996, both parties were fifty-one years of age. Plaintiff/Appellee Elmer Lewis Sides (Husband) owned and operated an auto parts store in Collierville, Tennessee, which he acquired in the early 1980's. In 1995, the year prior to the parties' divorce, the Husband's adjusted gross income from the store was $51,898. The Husband's average annual income for the years 1991 through 1995 was $41,679.

In contrast, the Wife contributed no income to the parties' marriage in the year prior to the parties' divorce. The Wife formerly worked at WREG Television in Memphis, where she earned approximately $20,000 per year at the time of her resignation in 1987. The Wife resigned because she was "totally burned out;" however, the Wife presented no evidence of any health problems or any other impediment which would prevent the Wife from obtaining comparable employment. In 1990, the Wife began "Expressions of Elegance," a floral design and home decorating business which she operated out of the marital home. Although the business earned a small profit in its first few years of operation, in the last two years prior to the trial, 1994 and 1995, the business operated at a loss of several thousand dollars per year.

The parties' disagreements over the Wife's business led, at least in part, to the demise of the marriage. In a conversation between the parties in July 1994, the Wife agreed to quit operating the business if it failed to show a profit by the end of the year. Although the business showed losses of over $3,000 that year, the Wife continued to operate the business, despite her promise to the Husband. The Husband objected to the Wife's continued operation of the business because, in addition to failing to contribute financially to the marriage, the Wife had depleted much of the parties' savings in order to fund the business. In 1991, the parties had approximately $25,000 in a money market account with Peoples Bank. By 1995, much of the account had been depleted. The Husband also kept several thousand dollars in the parties' freezer from which the Wife constantly borrowed but never repaid.

In its final decree of divorce, the trial court ordered the Husband to pay rehabilitative alimony to the Wife in the amount of $600 per month for a period of thirty-six (36) months and to pay $2,000 towards the Wife's attorney's fees. The trial court distributed the parties' property as follows:

| ASSET | WIFE | HUSBAND |
|---|---|---|
| Gun collection | | $ 200 |
| P&M Auto Parts | | $150,000 |
| 1992 GMC truck (equity) | | $ (9,290) |
| Bass boat | | $ 2,000 |
| Gold ring | | $ 300 |
| Silver chain | | $ 50 |
| Life insurance (cash value) | | $ 11,619 |
| Marital residence (equity) | $ 32,700 | |
| New York Times stock | $ 35,371 | |
| Furniture | $ 10,000 | |
| 1984 Pontiac Grand Prix | $ 3,000 | |
| 1983 Dodge van | $ 2,500 | |
| Slayden Bank account | $ 2,200 | |
| Snapper lawn mower | $ 1,000 | |
| Power mower | $ 100 | |
| Burial plots | $ 1,000 | |
| Expressions of Elegance | $ 25,000 | |
| WREG retirement account | $ 12,177 | |
| 1993 Plymouth Voyager van | $ 12,500 | |
| Money market account | $ 4,000 | |
| **TOTAL ASSET VALUES** | $141,548 | $154,879 |

The trial court ordered the parties' to assume the following marital debts:[1]

---

[1]The trial court also ordered the Husband to be responsible for paying debts of $18,000 for the Husband's 1992 GMC truck and $24,700 for P&M Auto Parts' new computer system. These debts are not included in the list of debts assigned to the Husband because the trial court appears to have considered these debts when it assigned values to the truck and to P&M Auto Parts. Similarly, the mortgage on the marital home does not appear on the list of debts assigned to the Wife.

| LIABILITY | WIFE | HUSBAND |
| --- | --- | --- |
| Peoples Bank of Collierville | | $ 7,000 |
| Peoples Bank of Collierville | | $ 4,000 |
| Wife's brother | $ 1,700 | |
| Boatmen's Bank | $ 5,854 | |
| Bean & Ison | $ 5,300 | |
| Brewer Detective Service | $ 3,413 | |
| Suit expenses | $ 278 | |
| Attorney's fees | $ 13,122 | |
| Crestar Visa | $ 2,587 | |
| Citibank Visa | $ 8,669 | |
| Advanta Visa | $ 7,326 | |
| Household Bank Visa | $ 7,248 | |
| Bankone Visa | $ 4,847 | |
| **TOTAL LIABILITIES** | $ 60,344 | $ 11,000 |
| **TOTAL ASSET VALUES** | $141,548 | $154,879 |
| **TOTAL NET ASSETS** | $ 81,204 | $143,879 |

On appeal, the Wife presents the following issues for this court's review:

1.	Did the Trial Court err in its valuation of Husband's business, P&M Auto Parts?

2.	Did the Trial Court err in its valuation of Wife's business, Expressions of Elegance?

3.	Did the Trial Court err in its division of marital property and allocation of marital debt by making an inequitable division pursuant to T.C.A. § 36-4-121?

4.	Did the Trial Court err by only awarding Wife alimony in the amount of $600.00 per month for a period of 36 months in light of the factors found in T.C.A. § 36-5-101?

5.	Did the Trial Court err by only awarding Wife $2,000.00 of her attorney fees?

We first conclude that the trial court properly valued the Husband's business, P&M Auto Parts, at $150,000. At trial, the Wife's expert, Charles Michael Ison, testified that, in his opinion, P&M Auto Parts was worth $170,000. Ison, a certified public accountant, arrived at this

value by using a weighted combination of the asset value method and the earnings value method. Ison applied a fifteen percent (15%) discount for lack of marketability, inasmuch as P&M Auto Parts is a sole proprietorship, and he also discounted the accounts receivables and inventory by $10,000 to account for any uncollectible accounts or obsolete inventory. Ison did not use the market value method because he was unable to discover any comparable sales in the area.

In contrast, the Husband testified that his business was worth only $100,000. In support of this opinion, the Husband testified that he did not own the building in which the store was located; that the building's landlord had advised the Husband that the rent would increase substantially in the next two or three months; that the Husband recently had incurred a liability of almost $25,000 to purchase a new computer system for the store; and that the Husband knew of a similar store in Moscow, Tennessee, which the owner had been unable to sell. The Husband also noted that two competitors, NAPA and Auto Zone, operated much larger parts stores nearby. The "Super NAPA Store" had opened just six months prior to trial.

The trial court, in its discretion, was free to place a value on the parties' marital assets, including the Husband's business, as long as such value was within the range of competent evidence submitted. *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. App. 1987). In this regard, the Husband, as the owner of P&M Auto Parts, was qualified to give an opinion as to the value of the business. *See Blackburn v. Murphy*, 737 S.W.2d 529, 532 (Tenn. 1987); *State ex rel. Smith v. Livingston Limestone Co.*, 547 S.W.2d 942, 943 (Tenn. 1977); *Price v. Allstate Ins. Co.*, 614 S.W.2d 377, 379 (Tenn. App. 1981). In light of the Husband's testimony, we conclude that the trial court's valuation of P&M Auto Parts was within the range of competent evidence submitted by the parties and, thus, should be affirmed. *See Koch v. Koch*, 874 S.W.2d 571, 576-77 (Tenn. App. 1993) (affirming trial court's $200,000 valuation of Husband's sole proprietorship business where Husband testified business was worth $105,000, Husband's CPA testified business was worth $177,160, and business's balance sheet showed net asset value in excess of $300,000).

As for the trial court's valuation of the Wife's business, however, we agree with the Wife's contention that the evidence fails to support the $25,000 value placed on the business by the trial court. The trial court's written opinion indicates that the Husband's pre-trial memorandum was

the source of this figure, but no evidence was introduced at trial to support this value. The Husband testified that, in his opinion, the Wife's business was worth $25,000. Later in his testimony, however, the Husband admitted that he knew nothing about the Wife's business, and the trial court ruled that his testimony on this issue was inadmissible. The Wife testified that, in her opinion, the business was worth only $14,500 based on the value of the business's current inventory and supplies. It was undisputed that, in the two years prior to trial, the business made no profits and, in fact, incurred losses of over $8,500.

Despite the trial court's error in evaluating the Wife's business, we conclude that the trial court's distribution of the parties' marital property was equitable under the circumstances of this case. *See Terrell v. Terrell*, No. 02A01-9610-CV-00254, 1997 WL 576536, at *4 (Tenn. App. Sept. 18, 1997). Trial courts have broad discretion in dividing marital estates, and their decisions are afforded great weight on appeal. *Fisher v. Fisher*, 648 S.W.2d 244, 246 (Tenn. 1983); *Harrington v. Harrington*, 798 S.W.2d 244, 245 (Tenn. App. 1990). Although the trial court's distribution of the marital property must be equitable, there is no requirement that the division be equal. *Word v. Word*, 937 S.W.2d 931, 933 (Tenn. App. 1996); *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. App. 1988).

Valuing the Wife's business at $14,500, instead of $25,000, would result in the following distribution by the trial court:

|  | WIFE | HUSBAND |
|---|---|---|
| TOTAL ASSET VALUES | $131,048 | $154,879 |
| TOTAL LIABILITIES | $ 60,344 | $ 11,000 |
| TOTAL NET ASSETS | $ 69,704 | $143,879 |

Although the division of marital property need not be equal, we note that the initial distribution effected by the trial court awards property of roughly comparable value to the parties. The Wife was awarded $131,048, or forty-six percent (46%), of the marital property while the Husband was awarded $154,879, or fifty-four percent (54%).

The distribution does not become uneven until the liabilities are considered. Nevertheless, we conclude that the trial court acted within its discretion in assigning the listed liabilities to the Wife. Over $30,000 of these liabilities constituted credit card debt which the Wife incurred after the parties' separation. This debt was incurred during a time when the Husband was paying substantial support on behalf of the Wife. In addition to paying temporary support to the Wife in the amount of $500 per month, the Husband was responsible for paying the $779 house note on the marital residence in which the Wife was living, utilities and Cablevision for the marital residence, automobile insurance and repairs, medical insurance and noncovered medical expenses, and burial insurance. Similarly, over $25,000 of the Wife's liabilities were incurred after the parties' separation and related to the pending divorce action, such as detective fees, attorney's fees, and expert witness fees. The trial court specifically found that the Wife had "incurred unusually high attorney's fees" in light of the relatively "modest means" of the parties. Moreover, we note that the Wife incurred a debt of over $3,400 to a detective service but did not present any detectives as witnesses at trial. Under these circumstances, the trial court did not err in allocating these debts to the Wife.

The trial court's unequal distribution of marital property is further supported by the court's finding that the Wife had depleted marital assets. In distributing the parties' marital property, the trial court was required to consider, *inter alia*, the "contribution of each party to the acquisition, preservation, appreciation or dissipation" of the property. T.C.A. § 36-4-121(c)(5) (1996). Here, the trial court specifically found that the Wife had "depleted marital property through investment in her losing business." Accordingly, the trial court properly considered this factor in awarding the Husband a greater share of the marital estate than the Wife. ***See Storey v. Storey***, 835 S.W.2d 593, 598 (Tenn. App. 1992); ***Terrell v. Terrell***, No. 02A01-9610-CV-00254, 1997 WL 576536, at \*5 (Tenn. App. Sept. 18, 1997).

We also affirm the trial court's award of rehabilitative alimony to the Wife instead of periodic or ***in futuro*** alimony. The general assembly has expressed the intent "that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance" as opposed to periodic or long-term alimony. T.C.A. § 36-5-101(d)(1) (1996). If the evidence shows

that rehabilitation is not feasible, trial courts still may award periodic or long-term alimony. ***Id.*** In the present case, however, no evidence was presented to show that the Wife could not be rehabilitated. At the time of trial, the Wife was fifty-one years of age and in apparent good health. The Husband testified that the Wife suffered from no health problems which would prevent her from finding work comparable to her former position with WREG Television, and the Wife failed to rebut this testimony. The Wife earned approximately $20,000 per year at WREG Television, and the trial court found that the Wife currently had an earning capacity of approximately $24,000 per year. Under these circumstances, the trial court did not err in awarding the Wife rehabilitative alimony for a period of thirty-six months to provide time for the Wife to become self-sustaining. ***See Storey v. Storey***, 835 S.W.2d 593, 597 (Tenn. App. 1992); ***Loria v. Loria***, No. 01A01-9609-CH-00441, 1997 WL 107170, at *3 (Tenn. App. Mar. 12, 1997).

In light of the trial court's finding as to the Wife's earning ability, we also affirm the amount of alimony awarded. "The propriety of awarding alimony as well as the amount depends upon the unique facts of each case." ***Campanali v. Campanali***, 695 S.W.2d 193, 197 (Tenn. App. 1985). For this reason, the amount of alimony awarded in a divorce case is largely within the trial court's discretion, and this court will not interfere with the trial court's ruling except upon a clear showing of abuse of that discretion. ***Lyon v. Lyon***, 765 S.W.2d 759, 762-63 (Tenn. App. 1988). After carefully reviewing the record, we conclude that the trial court did not abuse its discretion in determining the amount of alimony awarded in this case.

Finally, we affirm the trial court's decision to require the Husband to contribute only $2,000 towards the Wife's attorney's fees. As with the trial court's decision to award rehabilitative alimony, the decision to award attorney's fees, and the amount thereof, were within the sound discretion of the trial court and will not be disturbed on appeal unless the evidence preponderates against the court's decision. ***Houghland v. Houghland***, 844 S.W.2d 619, 623 (Tenn. App. 1992); ***Storey v. Storey***, 835 S.W.2d 593, 597 (Tenn. App. 1992). As previously indicated, the trial court specifically found that the fees requested by the Wife were "unusually high" given the parties' "modest means," and the court appeared to question the necessity for incurring all of these fees. We additionally note that the Wife was awarded significant assets in the final divorce decree and, as found by the trial court, she has an earning capacity of approximately $24,000 per year.

Accordingly, we conclude that the evidence does not preponderate against the trial court's decision to award the Wife only $2,000 of her attorney's fees.  **See Thompson v. Thompson**, 797 S.W.2d 599, 605 (Tenn. App. 1990); **Walker v. Walker**, 656 S.W.2d 11, 15 (Tenn. App. 1983), **overruled on other grounds by Seessel v. Seessel**, 748 S.W.2d 422 (Tenn. 1988); **see also Connors v. Connors**, 594 S.W.2d 672 (Tenn. 1980).

The trial court's judgment is affirmed.  Costs of this appeal are taxed to the Wife, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
SUMMERS, Sp. J. (Concurs)