# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT JACKSON

MATTIE GREEN TERRELL,    )
    )
    Plaintiff/Appellee,    )  Shelby Circuit No. 146626 R.D.
    )
VS.    )  Appeal No. 02A01-9610-CV-00254
    )
MACK TERRELL,    )
    )
    Defendant/Appellant.    )

**FILED**

September 18, 1997

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

### APPEAL FROM THE CIRCUIT COURT OF SHELBY COUNTY
### AT MEMPHIS, TENNESSEE
### THE HONORABLE ROBERT L. CHILDERS, JUDGE

**KATHLEEN D. NORFLEET**
Memphis, Tennessee
Attorney for Appellant

**SABRINA D. BALL**
**LONG, UMSTED & JONES**
Memphis, Tennessee
Attorney for Appellee

**AFFIRMED AS MODIFIED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

Defendant Mack Terrell (Husband) appeals the final divorce decree entered by the trial court which distributed the parties' property and ordered the Husband to pay child support by income assignment to Plaintiff Mattie Green Terrell (Wife). We affirm the trial court's judgment, with minor modifications.

_____I. Factual and Procedural History

The Wife filed this divorce action in August 1994, after twenty years of marriage. The parties had three children, but only one child, a fifteen-year-old daughter, remained a minor at the time of trial. The Wife had been employed by the United States Postal Service for twenty-seven years. The Husband was employed by Mid-South Transportation Management, Inc., where he had worked as a MATA (Memphis Area Transit Authority) bus driver for twenty-three years. During the year prior to the final divorce hearing, the Wife earned approximately $50,000 from her employment, while the Husband earned approximately $40,000.

At trial, the Wife testified that the Husband's gambling activities had been a problem throughout the marriage. According to the Wife,

> [The Husband] went to the dog track and the poker games. And he went -- usually he would leave on Thursday night when he got paid, and we might not see him anymore until Sunday when he came home.
>
> . . . .
>
> Sometime he would lose his whole check.

In the year prior to the parties' separation, the Husband lost $2,000 within a two-month period by gambling. In October 1993, the Husband had $2,000 in savings. By December 1993, he had gambled and lost the entire amount.

The Husband denied having a gambling problem, but he admitted occasionally visiting the dog track in West Memphis, Arkansas, as well as playing in poker games where the "pot" contained as much as $300. Because of the Husband's gambling problem, the Wife opened a separate checking account in the early 1980's. Thereafter, upon receiving

their respective paychecks, the parties contributed equally to the household bills and expenses, including the mortgage payments on the marital home, and retained the balance of their incomes to use as they wished. During the last five years of the marriage, the Wife used her discretionary income to purchase various investments, including stocks, savings bonds, mutual funds, and other investments. According to the Wife, after paying his share of the household expenses, the Husband spent his remaining income gambling.

Per the parties' stipulation at trial, the trial court awarded the Wife an absolute divorce on the grounds of inappropriate marital conduct. In its final divorce decree, the trial court awarded the parties joint custody of the minor child and designated the Wife as the primary custodial parent. The trial court ordered the Husband to pay child support to the Wife in the amount of $500 per month and ordered that this obligation be paid by income assignment. The trial court distributed the parties' household goods and furnishings by ordering the Husband to compile two lists of the property and to allow the Wife to choose one list as her property. The trial court distributed the parties' remaining property as follows:

To the Husband:

| | |
|---|---|
| One-half of equity in marital residence | $ 10,000.00 |
| 1979 Camaro Z28 | $ 1,025.00 |
| 1988 Pontiac LeMans | $ 1,425.00 |
| Globe Life Insurance policy (cash surrender value) | $ 274.11 |
| Leader Federal account | $ 1,239.00 |
| MATA pension and retirement account | $ 46,470.56 |
| Total | $ 60,433.67 |

To the Wife:

| | |
|---|---:|
| One-half of equity in marital residence | $ 10,000.00 |
| 1986 Audi 5000 | $ 2,300.00 |
| 1993 Toyota Camry Sedan XLE | ($ 3,354.00) |
| Leader Federal stock | $ 4,275.00 |
| Savings bonds | $ 500.00 |
| Twentieth Century mutual fund | $ 3,583.00 |
| Janus fund | $ 1,865.96 |
| Globe Life Insurance policy (cash surrender value) | $ 246.23 |
| Great American Reserve Insurance annuity | $ 2,801.71 |
| First Tennessee cashier's check | $ 2,000.00 |
| Household goods and furniture purchased after separation | $ 7,027.00 |
| Cash | $ 2,100.00 |
| USPS pension and retirement benefits, including thrift savings plan | $ 50,646.00 |
| Total | $ 83,990.90 |

In making this distribution, the trial court specifically found that the Husband had "dissipated and wasted thousands of dollars gambling." The final decree contained no provision for attorney's fees, thus leaving each party to pay his or her own fees.

On appeal, the Husband challenges the trial court's valuation and distribution of the parties' marital property and the trial court's decision to require the Husband to pay child support by income assignment.

## II. Cash Withdrawals

The Husband first contends that the trial court erred in distributing the parties' property without taking into account cash withdrawals from marital funds made by the Wife near the time of the parties' separation. At trial, the Wife acknowledged that she had withdrawn approximately $13,000 from a Memphis Area Teachers Credit Union account, $9,000 from a First Tennessee Bank account, and $3,000 from a Twentieth Century mutual fund account. The Wife also cashed a certificate of deposit with National Bank of Commerce containing approximately $8,000, for cash withdrawals totaling $33,000.

We agree that the funds withdrawn by the Wife should have been considered by the trial court in its division of the marital estate. See Cupples v. Cupples, No. 02A01-9408-CH-00193, 1995 WL 650134, at *5 (Tenn. App. Nov. 2, 1995), perm. app.

4

denied (Tenn. Feb. 26, 1996). Nevertheless, we decline to disturb the trial court's distribution of the parties' property for several reasons. First, as the Husband acknowledges on appeal, the trial court's equitable distribution scheme does take into account a large portion of the $33,000 in withdrawals. In distributing the parties' property, the trial court awarded the Wife $2,100 in cash, the amount the Wife testified was remaining from the original $33,000.[1] The trial court also awarded the Wife $7,027 in household goods and furniture purchased by the Wife after the separation.[2]

Moreover, the evidence at trial revealed that $9,000 of the withdrawals was not marital property. The Wife testified, without contradiction, that $9,000 of the funds represented a gift to the Wife from the Wife's mother. The $9,000 was in an account bearing the Wife's name only. Under these circumstances, the trial court properly could have found that $9,000 of the cash withdrawals constituted the Wife's separate property. See Brown v. Brown, 913 S.W.2d 163, 167 (Tenn. App. 1994) (noting that fair interpretation of trial court's memorandum opinion was determination that husband's interest in family business was his separate property because it was gift to him alone from his father); see also T.C.A. § 36-4-121(b)(2)(D) (1991) (defining as separate property "[p]roperty acquired by a spouse at any time by gift, bequest, devise or descent").

A consideration of the foregoing assets and gift leaves $14,873 unaccounted for out of the original $33,000 in cash withdrawals. The Wife testified that she spent $850 of these funds on the minor daughter's orthodontic bills. At the time of trial, the Husband had made no contribution toward these bills, although a previous court order required him to pay forty percent (40%) of such expenses. Of the remaining $14,023, the Wife testified that she spent these funds on car repair bills, vacation expenses, and an automobile down payment. Even if this $14,023 remains unaccounted for, we conclude, for reasons

---

[1]The $2,000 First Tennessee Bank cashier's check distributed to the Wife was dated September 4, 1992, and was not part of the $33,000 in cash withdrawals made by the Wife around the time of the parties' separation.

[2]At trial, the Wife indicated that, from the $33,000 in cash withdrawals, she spent $5,227 on furniture for her new apartment, $300 on a new television, and $1,500 on other miscellaneous start-up expenses.

5

explained hereinafter, that neither this discrepancy nor any other alleged property valuation errors justify disturbing the trial court's equitable distribution scheme.

### III. Valuation of Husband's Retirement Account and Wife's Automobile

As for the other alleged property valuation errors, the Husband challenges the trial court's valuations of the Husband's retirement account and the Wife's automobile. In the final divorce decree, the trial court valued the Husband's retirement account at $46,470.56, which included $30,442.44 in employee contributions plus $16,028.12 in interest. In valuing the Wife's retirement account, however, the trial court considered only the Wife's contributions because the material provided by the Wife's employer did not indicate the amount of any accrued interest.[3] The Husband contends that the trial court erred in failing to use the same method, i.e. contributions only, for evaluating each party's retirement account.

The Husband also contends that the trial court erred in valuing the Wife's automobile based on the Wife's opinion of the car's value when the Husband presented evidence of the car's NADA book value. The Wife's affidavit of income and expenses indicated that she believed the car, a 1993 Toyota Camry Sedan XLE, to be worth only $13,800. Inasmuch as the Wife still owed $17,154 on the car, the trial court assigned it a negative value of $3,354. At trial, however, the Husband presented evidence that the retail value of the car was actually $18,150, given the car's optional features and low mileage. Taking into account the lien on the car, therefore, the Husband contended that the value of the car was $996.

The Husband's argument that the trial court should have used the same method in valuing the parties' retirement accounts appears to be well-taken. We note, however, that the Husband failed to provide evidence at trial of the current value of his retirement account while the Wife did provide such information concerning her account. At trial, the

---

[3]The trial court awarded a total of $50,646 in retirement benefits to the Wife. This amount included $37,646 for the Wife's employee contributions and $13,000 for her thrift savings plan.

6

Husband presented evidence that he had contributed $30,442.44 to his retirement account as of December 31, 1994. As a result of the Husband's continued contributions, the amount in the Husband's retirement account presumably would have increased significantly by the date of trial in March 1996, but the Husband failed to show the amount of this increase. The evidence showed, for example, that between the months of February 1995 and March 1996 the value of the Wife's retirement account increased by $2,158 (or 6%) as a result of the Wife's contributions.

The statute governing the distribution of marital property requires that marital property be "valued as of a date as near as reasonably possible" to the date of the final divorce hearing. T.C.A. § 36-4-121(b)(1)(A) (1991). In accordance with this principle, retirement accounts "must be valued as of a date as near as possible" to the trial date. Kendrick v. Kendrick, 902 S.W.2d 918, 927 (Tenn. App. 1994). Based on the Husband's failure to present evidence of the value of his retirement account as of the date of the trial, or as of a reasonably close date, we conclude that the trial court did not err in refusing to use $30,442.44 as the value of the Husband's retirement account.

On the other hand, we conclude that the evidence preponderates against the trial court's finding that the Wife's automobile had a negative value of $3,354. This finding was based on the Wife's affidavit of income and expenses, introduced at trial, in which she opined that the car was worth only $13,800. Even if the Wife's affidavit properly could be considered as evidence,[4] her opinion as to the car's value reflected therein was undermined on cross-examination when the Wife admitted that she purchased the car for $18,824 only five months prior to the trial. The Wife described the car as a 1993 Toyota Camry Sedan XLE with a power sunroof, power and leather seats, anti-lock brakes, and low mileage. According to the NADA information submitted into evidence by the Husband, the described vehicle had a retail value of $18,150 at the time of trial.

---

[4] See Turner v. Turner, 776 S.W.2d 88, 90 (Tenn. App. 1988).

We recognize that the Wife, as the owner of the automobile, was qualified to give an opinion as to the automobile's value. See Blackburn v. Murphy, 737 S.W.2d 529, 532 (Tenn. 1987); State ex rel. Smith v. Livingston Limestone Co., 547 S.W.2d 942, 943 (Tenn. 1977); Price v. Allstate Ins. Co., 614 S.W.2d 377, 379 (Tenn. App. 1981). We also recognize that, although NADA (National Automobile Dealers Association) "blue book" values constitute highly probative evidence, this source is not conclusive evidence of an automobile's value. See First Tennessee Bank Nat'l Ass'n v. Helton, No. 03A01-9501-CV-00026, 1995 WL 515658, at **3-4 (Tenn. App. Aug. 31, 1995); Jackson v. Rodgers Cadillac, Inc., 1991 WL 73952, **3-4 (Tenn. App. May 9, 1991). Given the lack of probative evidence presented by the Wife on this issue, however, we conclude that the evidence preponderates against the trial court's finding that the car had a negative value of $3,354, and agree that a positive value of $996 more closely reflects the value of the Wife's automobile.

### IV. Distribution of Marital Property

Despite any errors in property valuation, we nevertheless conclude that the record supports the equitable distribution achieved by the trial court in its final decree. See Melton v. Melton, No. 02A01-9701-CH-00022, 1997 WL 367682, **2-3 (Tenn. App. July 2, 1997). Trial courts have broad discretion in dividing marital estates, and their decisions are afforded great weight on appeal. Fisher v. Fisher, 648 S.W.2d 244, 246 (Tenn. 1983); Harrington v. Harrington, 798 S.W.2d 244, 245 (Tenn. App. 1990). The trial court's division of marital property need not be equal. Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. App. 1988). "The test is whether the division is equitable, not whether it is equal." Word v. Word, 937 S.W.2d 931, 933 (Tenn. App. 1996).

In distributing the parties' marital property, the trial court was required to consider, among other factors, the "contribution of each party to the acquisition, preservation, appreciation or dissipation" of the property. T.C.A. § 36-4-121(c)(5) (1991). In making its distribution in this case, the trial court specifically found that the Husband had dissipated

and wasted thousands of dollars in marital assets by gambling. After carefully reviewing the testimony, we conclude that the evidence supports this finding. On the other hand, the evidence indicates that the Wife was largely responsible for the acquisition, preservation, and appreciation of the marital estate. While the Husband spent his discretionary income gambling, the evidence demonstrated that the Wife used her income to purchase various investments, such as the stocks, savings bonds, mutual funds, and other investments awarded to her in the final divorce decree. Based on the foregoing evidence, we affirm the trial court's decision to award the Wife a greater share of the marital estate than the Husband in this case. See Storey v. Storey, 835 S.W.2d 593, 598 (Tenn. App. 1992) (affirming trial court's decision to award wife all of marital assets based, in part, on evidence that husband had dissipated marital assets).

We also affirm the trial court's decision to award each of the parties $10,000 in equity in the marital home. In a divorce action, the trial court, "in its discretion, is free to place a value on a marital asset that is within the range of the evidence submitted." Wallace v. Wallace, 733 S.W.2d 102, 107 (Tenn. App. 1987). At trial, the Wife testified that the marital home had an equity of $20,000. The Husband testified that if the home were sold the parties would realize only $14,854 after paying closing costs; however, there was no evidence that the parties planned to sell the residence in the foreseeable future. Under these circumstances, we conclude that the trial court's valuation of the equity in the marital home was within the range of the evidence submitted by the parties.

Nevertheless, we agree with the Husband that the trial court's distribution of the equity in the marital home warrants some clarification. Although the trial court's judgment does not specify which party shall have ownership and possession of the marital home, the Wife concedes that, with the exception of $10,000 in equity, the marital home should be awarded to the Husband. Accordingly, we modify the trial court's judgment to provide that the Husband shall be awarded ownership and possession of the marital home. In order to secure the Wife's interest in the equity in the marital home, however, we also modify the trial court's judgment to impose a lien upon the marital home in favor of the Wife in the

9

amount of $10,000.  See T.C.A. § 36-4-121(e)(2) (1991) (authorizing the court to "impose a lien upon the marital real property assigned to a party as security for the payment of spouse support or payment pursuant to property division").

As for the Husband's remaining arguments on appeal, we reject the Husband's contention that the trial court erred in dividing the parties' personalty by ordering the Husband to compile two lists of the personalty and permitting the Wife to choose which list of items she wanted.  We agree that this method of dividing the parties' personalty appears to be somewhat unorthodox.  Our review of the trial transcript, however, reveals that the Husband failed to raise an objection when the trial court ordered the parties to divide their personalty by use of this method.  Later in the trial, the Wife's attorney sought clarification from the trial court as to the proper method for dividing the parties' personalty.  Upon receiving such clarification, the Wife's attorney announced that the division could be accomplished "outside of court."  Again, the Husband did not raise an objection to the trial court's ordered method of dividing the personalty.

An appellant waives an issue for purposes of appellate review when he fails to make the appropriate objection at the trial court level.  Barnhill v. Barnhill, 826 S.W.2d 443, 458 (Tenn. App. 1991).  Inasmuch as the Husband failed to make any objection below to the trial court's ordered method of dividing the parties' personalty,[5] we conclude that he has waived this issue on appeal.

## V.  Income Assignment Order

Finally, we reject the Husband's argument that the trial court erred in ordering him to pay child support to the Wife by income assignment.  By statute, the trial court was required to order the Husband to pay child support by income assignment, even if the Husband was current on his child support obligations at the time of entry of the divorce

---

[5]The record indicates that closing arguments were not transcribed.

10

decree.  T.C.A. § 36-5-501(a)(1) (Supp. 1995).   As pertinent, section 36-5-501(a)(1)

provides that

> For any order of child support issued, modified, or enforced on
> or after July 1, 1994, the court shall order an immediate
> assignment to the clerk of the court or the department of
> human services or its contractor of the obligor's wages,
> salaries, commissions, pensions, annuities, and other income
> due or to become due to the obligor.  The order of assignment
> shall issue regardless of whether support payments are in
> arrears on the effective date of the order. . . .   The order
> shall . . . include an amount necessary to cover the fee due the
> clerk of the court. . . .

T.C.A. § 36-5-501(a)(1) (Supp. 1995).

The only two exceptions to this requirement are

> (A)     If, upon proof by one party, there is a written
> finding of fact in the order of the court that there is good cause
> not to require immediate income assignment and the proof
> shows that the obligor has made timely payment of previously
> ordered support in cases involving the modification of support
> orders. "Good cause" shall only be established upon proof that
> the immediate income assignment would not be in the best
> interests of the child.  The court shall, in its order, state
> specifically why such assignment will not be in the child's best
> interests; or
>
> (B)     If there is a written agreement by both parties
> that provides for alternative arrangements.  Such agreement
> must be reviewed by the court and entered in the record.

T.C.A. § 35-5-501(a)(2) (Supp. 1995).

In construing the foregoing statute, we note that section 36-5-501(a) appears to

presumptively require that all child support orders issued after July 1, 1994, be paid by

income assignment.  The trial court may waive this requirement only if the parties agree

pursuant to section 36-5-501(a)(2)(B), or if the trial court makes a written finding of good

cause pursuant to section 36-5-501(a)(2)(A).

At trial, the Husband argued that his child support obligation should not be paid by

income assignment because he never had been late in making a payment.  The Husband

also argued that payment by income assignment was not in the best interest of the parties'

child because the court clerk's fee of five percent (5%) would take "money away from the family."

We conclude that, absent other compelling circumstances not present in this case, the assessment of a court clerk's fee pursuant to section 36-5-501(a)(1) does not constitute good cause to waive the requirement of an income assignment order under section 36-5-501(a)(2)(A). By its express terms, section 36-5-501(a)(1) contemplates that a court clerk's fee will be assessed. The statute requires the assignment order to include "an amount necessary to cover" the fee. T.C.A. § 36-5-501(a)(1) (Supp. 1995). We doubt that the legislature, in creating its "good cause" exception, intended for the court clerk's fee to provide the basis for such an exception when the statute itself contemplates the imposition of this fee. Further, the imposition of a court clerk's fee necessarily reduces the obligor's income. Under the Husband's rationale, therefore, an income assignment order imposing such a fee would never be in the child's best interest. Such an interpretation would render meaningless the statute's presumptive requirement of the issuance of an income assignment order.

## VI. Attorney's Fees

In light of our affirmance of the trial court's distribution of the parties' property, we also affirm the trial court's decision not to award the Wife her attorney's fees. The Wife raised this issue only in the event that this court altered the trial court's equitable distribution scheme on appeal. Inasmuch as the Wife was awarded sufficient assets with which to pay her own attorney, we likewise decline to award the Wife her attorney's fees incurred on this appeal. See Ingram v. Ingram, 721 S.W.2d 262, 264 (Tenn. App. 1986).

## VII. Conclusion

The judgment of the trial court is hereby modified to provide (1) that the Husband shall be awarded ownership and possession of the marital home and (2) that a $10,000

12

lien shall be imposed upon the marital home in favor of the Wife.  In all other respects, the trial court's judgment is affirmed.  Costs of this appeal are taxed to Appellant, for which execution may issue if necessary.


 

 

_____
HIGHERS, J.


CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.